# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 28, 2013

No. 11-51057

Lyle W. Cayce
Clerk

In the Matter of: SPILLMAN DEVELOPMENT GROUP, LIMITED;

Debtor

---

FIRE EAGLE L.L.C.,

Appellant

v.

RICHARD L. BISCHOFF; SPILLMAN INVESTMENT GROUP, LIMITED;
DONALD C. WALDEN; STEPHEN W. GURASICH, JR.; ROBERT H. WEST;
RICHARD TOPFER; ALAN TOPFER; MORTON L. TOPFER,

Appellees

---

Appeal from the United States District Court
for the Western District of Texas

---

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Fire Eagle L.L.C. ("Fire Eagle") appeals the district court's decision affirming a bankruptcy court's grants of summary judgment in two consolidated matters.  We AFFIRM.

No. 11-51057

**FACTS AND PROCEEDINGS**

Beginning in November 2001, Spillman Development Group, Ltd. ("SDG") took out a series of loans to finance its construction of the Falconhead Golf Course in Bee Cave, Texas. American Bank of Texas ("the Bank") loaned SDG an initial $7.2 million and later a further $900,000. Both of these loans (together, "the Senior Indebtedness") were secured by liens on SDG's assets and limited guarantees executed by SDG principals. Each of these limited guarantees contained a forum-selection clause requiring that any suit brought by the guarantors be brought in Grayson County, Texas, which is located within the Eastern District of Texas. As further collateral for the Senior Indebtedness, the Spillman Investment Group, Ltd. ("SIG") assigned its rights in a $1.2 million certificate of deposit to the Bank under the condition that the Bank would return the certificate to SIG upon payment of the Senior Indebtedness. In addition to the Senior Indebtedness, SDG also borrowed $4.1 million from Fire Eagle Neither the guarantees nor the certificate of deposit secured this junior debt owed to Fire Eagle.

On August 1, 2005, SDG filed for bankruptcy in the Western District of Texas, its principal creditors being the Bank and Fire Eagle. After disagreements between these two creditors over competing proposed Chapter 11 reorganization plans, Fire Eagle purchased the Senior Indebtedness from the Bank. At the time of this acquisition, Fire Eagle and the Bank stipulated that the outstanding balance owed on the Senior Indebtedness was approximately $9.1 million. Despite this consolidation amongst the creditors, the bankruptcy court refused to confirm either the reorganization plan proposed by Fire Eagle or that proposed by SDG and instead ordered an 11 U.S.C. § 363(b) sale of SDG's assets, which included the principal assets securing the Senior Indebtedness. The bidding on these assets progressed until an entity called Falcon Golf Course Partners, L.P. submitted a cash bid of $9.2 million. At this point, Fire Eagle

entered a credit bid, pursuant to 11 U.S.C. § 363(k), of $9.3 million. The bankruptcy court accepted Fire Eagle's bid and later held, on SDG's motion, that Fire Eagle's credit bid had paid in full the Senior Indebtedness and that Fire Eagle had no deficiency claim against SDG's estate for the Senior Indebtedness.

SIG and all of the individual guarantors except for one ("the Guarantors") then filed an adversary action in bankruptcy court in the Western District of Texas ("the Guarantors' Adversary"), seeking a declaratory judgment that, as a result of the sale, the Guarantors should be released from their obligations under the guaranty agreements and that the certificate of deposit should be returned to SIG. Fire Eagle moved to dismiss the suit on a number of grounds, including that the bankruptcy court lacked subject-matter jurisdiction and that venue was improper because of the forum-selection clauses contained within the guarantees. Fire Eagle also filed its own action against the remaining guarantor, Richard Bischoff, in district court in the Eastern District of Louisiana ("the Bischoff Adversary"). Fire Eagle contended in both suits that its credit bid had not paid in full the Senior Indebtedness and that it could therefore still collect against the guarantees.

The bankruptcy court in the Western District of Texas resolved the Guarantors' Adversary by denying Fire Eagle's motion to dismiss and granting summary judgment to the Guarantors, holding that, "This is not rocket science. The Senior Loan has been PAID!!!!" Fire Eagle moved the court to reconsider, and Bischoff moved to intervene. The bankruptcy court denied Fire Eagle's motion to reconsider and granted Bischoff's motion to intervene.

Shortly thereafter, in the Bischoff Adversary, the district court in the Eastern District of Louisiana granted Bischoff's motion to transfer venue to the Western District of Texas for referral of the case to the bankruptcy court there, noting that Bischoff had become a party to the near-resolved Guarantors' Adversary. The bankruptcy court then consolidated the Bischoff Adversary and

No. 11-51057

the Guarantors' Adversary and granted Bischoff summary judgment. On SIG's motion, it also ordered the release of the certificate of deposit. After the bankruptcy court certified its rulings as final, Fire Eagle appealed. The district court affirmed the bankruptcy court's rulings, and Fire Eagle now appeals on numerous grounds.

## STANDARD OF REVIEW

In bankruptcy appeals, "we perform the identical task as the district court, reviewing the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law *de novo*." *U.S. Abatement Corp. v. Mobil Exploration & Producing U.S. Inc. (In re U.S. Abatement Corp.)*, 79 F.3d 393, 397 (5th Cir. 1996). We review *de novo* a district court's determination that a bankruptcy court had jurisdiction over a dispute. *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1021 (5th Cir. 1999). We review a district court's venue determinations for abuse of discretion only, *Abrams Shell v. Shell Oil Co.*, 343 F.3d 482, 486 (5th Cir. 2003), but a district court's decision as to the enforceability of a forum-selection clause is a legal issue that we review *de novo*, *Haynsworth v. The Corp.*, 121 F.3d 956, 961 (5th Cir. 1997).

## DISCUSSION

Fire Eagle raises seven distinct issues on appeal, contending that: (1) the bankruptcy court lacked jurisdiction over the underlying adversary actions; (2) the bankruptcy court lacked the statutory authority to enter final judgments in the two adversary actions; (3) the bankruptcy court's entering final judgments in the two adversary actions was unconstitutional; (4) venue was improper in the Western District of Texas in light of the forum-selection clauses in the guaranty agreements; (5) the transfer of venue of the Bischoff Adversary to the Western District of Texas was improper; and (6) the bankruptcy court's grant of summary judgment was in error.

### 1. The bankruptcy court's jurisdiction

A bankruptcy court's jurisdiction extends to "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b); *see also In re Bass*, 171 F.3d at 1022.  Proceedings are "related to" bankruptcy cases if their outcome "could conceivably have any effect on the estate being administered in bankruptcy." *In re Bass*, 171 F.3d at 1022 (quoting *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995)).  A "conceivable effect" in this context is any that "*could* alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which *in any way* impacts upon the handling and administration of the bankrupt estate." *FDIC v. Majestic Energy Corp. (In re Majestic Energy Corp.)*, 835 F.2d 87, 90 (5th Cir. 1988) (emphasis added) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

Fire Eagle contends that the bankruptcy court lacked jurisdiction because a bankruptcy court cannot "entertain collateral disputes between third parties that do not involve the bankrupt or its property" or "exercise jurisdiction over a private controversy which does not relate to matters pertaining to bankruptcy." *Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.)*, 794 F.2d 1051, 1055 (5th Cir. 1986) (quoting *Uranga v. Geib (In re Paso Del Norte Oil Co.)*, 755 F.2d 421, 424 (5th Cir. 1985)).

We disagree with Fire Eagle's characterization of this dispute.  If Fire Eagle were to succeed on the merits of this suit and proceed to recover against the guarantees and the certificate of deposit, such a recovery would presumably diminish Fire Eagle's deficiency claim against the bankruptcy estate, conceivably allowing a greater recovery for other unsecured creditors against the estate.  We have previously held that similar attenuated, hypothetical effects of third-party litigation can give rise to related-to bankruptcy jurisdiction. *See, e.g.*, *EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techs.,*

No. 11-51057

*Inc.)*, 430 F.3d 260, 266-67 (5th Cir. 2005) (finding related-to jurisdiction over third-party claims where collection on those claims could affect "the need for [a third party] to seek reimbursement from [the] bankruptcy estate"). Therefore, we hold that the bankruptcy court's jurisdiction extended to these matters and decline to reverse the district court's holding to that effect.

## 2. The bankruptcy court's statutory authority

"Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments [in such core proceedings]." 28 U.S.C. § 157(b)(1). However, while "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," in such cases he shall merely "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge." 28 U.S.C. § 157(c)(1). The bankruptcy court below found these proceedings to be core and therefore entered judgment without reference to the district court. Fire Eagle contends that these proceedings were not core and therefore that the bankruptcy court's judgment should be vacated because the bankruptcy court lacked statutory authority to enter such a judgment.

"If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). Fire Eagle contends that the claims asserted are merely state contract-law claims, but even such claims may be considered core if they are "dependent upon the rights created in bankruptcy." *In re Stonebridge*, 430 F.3d at 267. Because the basis for this dispute is whether Fire Eagle's credit bid had the effect of extinguishing the Senior Indebtedness, and because the right to credit bid is purely a creature of the Bankruptcy Code, *see* 11 U.S.C. § 363(k), we fail to see how this proceeding does not qualify as core under § 157(b)(1) and

No. 11-51057

therefore hold that the bankruptcy court's entering an order without reference to the district court was within its statutory authority.

### 3. The bankruptcy court's constitutional authority

In *Stern v. Marshall*, the Supreme Court held that it was unconstitutional for a bankruptcy court to issue a judgment on a state-law counterclaim for tortious interference with a gift expectancy, despite the fact that the claim itself was statutorily "core" pursuant to § 157(b)(2)(C) (defining as core proceedings "counterclaims by the estate against persons filing claims against the estate"). 131 S. Ct. 2594, 2600–01 (2011). It based this decision on the fact that the counterclaim was in no way reliant or dependent on proceedings in bankruptcy—it just happened to have been a counterclaim to a claim asserted in a bankruptcy proceeding. *Id.* at 2611. Fire Eagle contends that its claims in this matter are similarly beyond the constitutional authority of the bankruptcy courts to decide.

However, *Stern* itself stated that its holding was reliant on the fact that the counterclaim at issue was "a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy." *Id.* Fire Eagle's claim, on the other hand, is inextricably intertwined with the interpretation of a right created by federal bankruptcy law—the interpretation of the effect of Fire Eagle's credit bid is in fact determinative of Fire Eagle's claim. We therefore conclude that *Stern* is inapplicable and that there was no constitutional bar to the bankruptcy court's exercise of its jurisdiction over this statutorily core matter.

### 4. The propriety of venue in the Western District of Texas

Forum-selection "clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Each of the guaranty agreements at issue had forum-selection clauses providing

that "any action or proceeding by Guarantor against Lender shall be brought only in a court located in Grayson County, Texas." Grayson County falls within the Eastern District of Texas, but the Guarantors' Adversary was brought in the Western District of Texas. Fire Eagle contends that, because of the forum selections clauses in the guaranty agreements, laying venue in the Western District was improper and that the Guarantors' Adversary should therefore have been dismissed.

Enforcement of a forum-selection clause may be shown to be "'unreasonable' under the circumstances," *The Bremen*, 407 U.S. at 10, where enforcement would "violate[] a strong public policy," *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997). While we have never before squarely held that the ability of a bankruptcy court to resolve certain statutorily core proceedings implicates a strong public-policy interest, our case law requires us to reach that logical conclusion here.

We have previously held that a bankruptcy court may decline to enforce arbitration provisions that would compel arbitration of certain core proceedings because, "where a core proceeding involves adjudication of federal bankruptcy rights wholly divorced from inherited contractual claims, the importance of the federal bankruptcy forum provided by the [Bankruptcy] Code is at its zenith." *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1068 (5th Cir. 1997). We have also held that there is little if any difference "between arbitration and forum selection/choice-of-law clauses for enforceability purposes." *Haynsworth*, 121 F.3d at 963. At issue in this case is a core proceeding involving the adjudication of the effect of Fire Eagle's exercise of its right to credit bid, a right created by the Bankruptcy Code. Therefore, as we have found a sufficiently strong public-policy interest in justifying the non-enforcement of arbitration provisions in

No. 11-51057

analogous factual contexts, we similarly decline to disturb the bankruptcy court's decision not to enforce the forum-selection clauses here.

### 5. The propriety of the transfer of venue of the Bischoff Adversary

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Fire Eagle contends that the transfer of venue of the Bischoff Adversary out of the Eastern District of Louisiana and into the Western District of Texas constituted an abuse of discretion. This argument flies in the face of our well-established "first-to-file" rule. "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). Given that the Bischoff Adversary and the Guarantors' Adversary presented precisely the same, purely legal dispute, and given that the Guarantors' Adversary was filed first, we fail to see how the transfer of venue—according as it did with the first-to-file rule—constituted an abuse of discretion.

### 6. The bankruptcy court's grant of summary judgment

Fire Eagle has contended throughout the pendency of this matter that its credit bid for SDG's assets did not result in the Senior Indebtedness being paid in full. Fire Eagle argues that the district court should have assessed the fair market value of the assets it purchased from SDG's estate at the § 363(b) sale, and that only this value should be credited against the Senior Indebtedness. For the remainder, it would have us hold that it can still recover against the guaranty agreements that secured the Senior Indebtedness. The bankruptcy court and district court below both found this argument unavailing, and both held that Fire Eagle's credit bid did in fact pay in full the Senior Indebtedness.

9

No. 11-51057

On appeal, Fire Eagle advances three arguments for why the credit bid did not eliminate its right to recover against the guarantees: first, that credit bidding a proof of claim in a bankruptcy auction affects only the claim in bankruptcy and not any underlying debt; second, that events occurring in a debtor's bankruptcy do not typically "inure to the benefit of nonbankrupt guarantors"; and, third, that the guaranty agreements provide that the guarantors' obligations could not be affected by the bankruptcy.

Fire Eagle's first argument is logically unsound. If Fire Eagle had been outbid at the § 363(b) auction, as it nearly was, or if it had simply declined to credit bid its claims, then the cash proceeds from that auction would have been applied against the Senior Indebtedness as the most senior debt in the bankruptcy estate. If the Senior Indebtedness was paid in full with these cash proceeds, then it would be absurd to suggest that Fire Eagle could separately proceed against the guarantors. Under such a theory, Fire Eagle would be undeniably receiving recovery in excess of the face value of the Senior Indebtedness by virtue of guarantees that explicitly provide for their own termination on the payment in full of the Senior Indebtedness.

Consequently, for Fire Eagle's argument to be correct, its credit bid must not have been equivalent to a cash payment for the assets purchased. Title 11 U.S.C. § 363(k), though, provides that credit bidders "may offset [their] claim against the purchase price" of the property that is the subject of the § 363(b) bankruptcy sale. This provision explicitly contemplates mixed bids of cash and claims, implicitly presupposing an equivalence with cash of the value of the credit bid. We agree with the bankruptcy court and district court that Fire Eagle's credit bid constituted a payment-in-full of the Senior Indebtedness, just as if SDG's assets had been sold for cash.

Fire Eagle's second argument is similarly flawed. Fire Eagle cites to a number of cases in support of its contention that modification or elimination of

No. 11-51057

a debt in bankruptcy reorganization proceedings do not affect payment rights under guarantees of such debts. *See, e.g.*, *Applewood Chair Co. v. Three Rivers Planning & Dev. Dist. (In re Applewood Chair Co.)*, 203 F.3d 914, 918 (5th Cir. 2000); *United States v. Stribling Flying Serv., Inc.*, 734 F.2d 221, 223 (5th Cir. 1984). However, none of these cases deals with circumstances in which the guaranteed debt at issue was repaid in full with cash or a cash equivalent, as was the case here. Because the Senior Indebtedness was in fact repaid in full, the case law cited by Fire Eagle is simply inapposite.

Finally, while the guaranty agreements do provide that various occurrences such as a bankruptcy do not affect the validity of the guarantees, the guarantee agreements also provide for their own termination on payment of the guaranteed debt. Fire Eagle's third argument is thus unavailing as well.

For these reasons, we agree with the bankruptcy court and the district court below that Fire Eagle's credit bid had the effect of retiring the Senior Indebtedness, and we affirm the district court's holding that Fire Eagle cannot collect against the guaranty agreements.

We also decline to hold that an assessment of the fair-market value of the assets Fire Eagle purchased was called for or would have been proper. The Bankruptcy Code elsewhere does provide for valuations of the sort Fire Eagle seeks in this context. *See, e.g.*, 11 U.S.C. § 506(a). Its failure to do so in the context of § 363(b) sales is fatal to Fire Eagle's case, as at least one of our sister circuits has held. *See Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 461 (3d Cir. 2006).[1]

---

[1] Fire Eagle also argues that the district court's ordering of the release of the certificate of deposit was in error because its finding that no debt remained for it to secure was also in error. Because we hold that the district court correctly deemed the Senior Indebtedness to have been paid in full, Fire Eagle's argument with respect to the certificate of deposit is unavailing.

No. 11-51057

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.