# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-11355

United States Court of Appeals
Fifth Circuit

**FILED**

January 19, 2016

Lyle W. Cayce
Clerk

In the Matter of: JEFFREY KRUEGER

Debtor

---------------------------------

JEFFREY TRE KRUEGER,

Appellant

v.

MICHAEL TORRES,

Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, JONES, and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This appeal of a bankruptcy court decision dismissing a chapter 7 case "for cause" can only be described as an exercise in *chutzpah*. The debtor flagrantly and repeatedly abused bankruptcy and court processes to retain assets for himself and defeat the legitimate claims of his business partners. The bankruptcy and district courts finally had enough of his manipulation and rightly dismissed pursuant to 11 U.S.C. § 707(a) for the debtor's bad faith conduct constituting "cause" for dismissal. We AFFIRM.

No. 14-11355

## BACKGROUND

Appellant Krueger's winding road to this court began in the state district court in Travis County, Texas in 2011. Krueger and Appellee Michael Torres were embroiled in a lawsuit (filed originally by Krueger) over the ownership and control of a renewable energy company called Cru Energy, Inc. Cru Energy sought to build facilities in Texas that would process sorghum into biomethane gas. Krueger and Torres were both shareholders in Cru and accused each other of attempting to wrest control of the company and its business away through various fiduciary duty breaches, fraud, conversion, and tortious interference.

On the motion of Torres (and Cru Energy—both Torres and Krueger claimed to be litigating on behalf of Cru), the state district court entered a temporary restraining order in June 2011. Among other things, the TRO prohibited Krueger from making non-ordinary-course-of-business withdrawals from Cru Energy's bank account. This TRO was extended two weeks later and was to remain in force until the court ordered otherwise. Several weeks later, in July 2011, the state district court entered a temporary injunction prohibiting Krueger from making any withdrawals or transfers from any Cru Energy bank account, calling a shareholder meeting, or contacting any investor, potential investor, business partner, or potential business partner of Cru. Essentially, Krueger was enjoined from participating in Cru's business.

Krueger was not formally served with the injunction until October 2011. Around this time, Krueger formed a company called Kru (Krueger Renewable Utilities), which had the same business plan as Cru, as well as many of the same shareholders and investors. The bankruptcy court would later find that this was Krueger's naked attempt to avoid the injunction while continuing his efforts to shut Torres out of the company. As the bankruptcy court explained: "It would be an understatement to say that Kru's business was similar to Cru's

2

No. 14-11355

business. In fact, they were the same." *See In re Krueger*, No. 12-40328, 2014 WL 911857, at *6 (Bankr. N.D. Tex. Mar. 7, 2014).

But trouble was brewing for Krueger for breaching the various court orders entered against him. During the hearing on the temporary injunction, Krueger transferred $160,000 from a Cru Energy account to his personal bank account. Just after the TRO was entered, he had previously transferred just over $3,000 from the Cru account to his personal account. The state district court ordered Krueger to show cause why he should not be held in contempt for violating the TRO and the temporary injunction. The show cause hearing was scheduled for January 19, 2012. On January 18, Krueger filed a chapter 7 bankruptcy petition in the Northern District of Texas.

After the bankruptcy filing, the state court reset the show cause hearing to mid-February. Torres sought and received relief from the automatic stay to pursue the contempt motion against Krueger. The state court held Krueger in criminal contempt for making cash withdrawals in violation of the TRO. Krueger spent three days in jail. In a later proceeding, Krueger was held in contempt and sentenced to jail for violating the temporary injunction through his $160,000 withdrawal.[1]

In April 2012, a company named Green Alt[2] and Cru Energy (under Torres's control, but not Torres personally) filed an adversary proceeding in the bankruptcy court seeking exceptions to or denial of Krueger's discharge

---

[1] However, he was granted a writ of habeas corpus when a state appellate court determined that the temporary injunction was insufficiently specific to comply with Texas rules on injunctions. See *In re Krueger*, No. 03-12-00838-CV, 2013 WL 2157765, at *9 (Tex. App.—Austin, May 16, 2013, no pet.) (mem. op.).

[2] Green Alt had intervened in state court, alleging that Krueger, who was on Green Alt's board of directors, had stolen trade secrets and intellectual property to benefit Cru. Green Alt asked that Krueger's interest in Cru be awarded it in damages. When Krueger didn't respond to discovery, Green Alt moved for summary judgment on the basis of deemed admissions.

No. 14-11355

based on the grounds set forth in 11 U.S.C. § 523(a) (false pretenses, fraud, willful and malicious injury) and 11 U.S.C. § 727 (making false statements in connection with his bankruptcy petition). Following withdrawal of the reference, the district court had assumed responsibility for the adversary proceeding. Several months later, Green Alt settled its claims against Krueger and bowed out of both the state and bankruptcy litigation.

On May 21, 2013, fresh from the Texas Court of Appeals's favorable habeas ruling, Krueger called for a meeting of Cru Energy's shareholders. Torres did not attend. Although ownership of the shares had passed to the bankruptcy trustee, Krueger disregarded this legal nicety and voted his shares as well as proxy shares. Torres was removed from the board and Krueger was reelected along with three members he supported. In the board meeting that immediately followed, the board removed Torres as president and CEO; elected Krueger as chairman of the board, president, CEO, and treasurer of Cru Energy; fired the attorneys who represented Cru Energy in the suit against Krueger; voted to sue Torres and at least one of the attorneys; and importantly, dismissed all of Cru Energy's claims against Krueger.

Two months later, the district court noted that Cru no longer had an attorney of record in that proceeding (because Krueger had fired the attorneys). As the bankruptcy court tells it: "Krueger's actions placed Torres in a dilemma. In the adversary proceeding in the District Court, Torres had asserted no personal claims against Krueger. Instead, acting on behalf of Cru, Torres had asserted only claims by Cru against Krueger." *Krueger*, 2014 WL 911857, at *3. Torres sought to be substituted personally for Cru or to proceed derivatively on behalf of Cru, but the district court denied both motions. The district court subsequently dismissed all of Cru's claims against Krueger. Torres pursued an unsuccessful, interlocutory appeal of those rulings. *See Torres v. Krueger (In re Krueger)*, 596 F. App'x 319 (5th Cir. 2015).

4

No. 14-11355

The adversary discharge/dischargeability proceeding was then referred back to the bankruptcy court to consider only the claims that Krueger had asserted against Torres.  Torres responded with a motion to dismiss the bankruptcy case with prejudice for cause under 11 U.S.C. § 707(a).

The bankruptcy court allowed discovery, including the taking of depositions, heard live testimony in three days of hearings and admitted numerous exhibits into evidence.  Based on this record, the bankruptcy court granted the motion to dismiss for cause with a detailed memorandum opinion and imposed a two-year refiling bar on Krueger.  Having unsuccessfully sought reconsideration and appeal to the district court, Krueger appealed to this court, which has jurisdiction under 28 U.S.C. § 158(d)(1).

## DISCUSSION

This court applies "the same standard of review to the bankruptcy court decision that the district court applied." *Galaz v. Galaz (In re Galaz)*, 765 F.3d 426, 429 (5th Cir. 2014).  The bankruptcy court's factual findings are reviewed for clear error and its legal conclusions are reviewed de novo. *Id.*  The bankruptcy court's ultimate decision to dismiss under § 707(a) is reviewed for an abuse of discretion. *Peterson v. Atlas Supply Corp. (In re Atlas Supply Corp.)*, 857 F.2d 1061, 1063 (5th Cir. 1988).

Krueger appeals on a number of grounds, including some which center, rather ironically, on whether he received due process.[3]  These we discuss before turning to the question whether the court correctly applied § 707(a).

---

[3] Torres argues that Krueger has waived most of his appeal grounds because he did not properly designate them as issues on appeal from bankruptcy court to the district court. *See Smith ex rel. McCombs v. H.D. Smith Wholesale Drug Co. (In re McCombs)*, 659 F.3d 503, 510 (5th Cir. 2011) (quoting *Zimmerman v. Jenkins (In re GGM, P.C.)*, 165 F.3d 1026, 1032 (5th Cir.1999)).  This court's review of Krueger's statement of issues on appeal shows that he properly preserved his arguments.

No. 14-11355

## I.     Procedural Objections.

### A.  Contested Motion versus Adversary Proceeding

Krueger contends that the grounds on which this case was dismissed must be asserted in an adversary proceeding objecting to discharge under 11 U.S.C. § 727(a).

Under Federal Rule of Bankruptcy Procedure 7001, proceedings classified as adversary proceedings must be litigated as lawsuits under rules that essentially track the Federal Rules of Civil Procedure.  Objecting to a discharge under § 727, with narrow exceptions not applicable here, must be conducted as an adversary proceeding.  Fed. R. Bankr. P. 7001(4).  In all matters not listed in Rule 7001, relief can be had through motion after notice and a hearing.  Fed. R. Bankr. P. 9014.  Dismissal under § 707(a) is not listed in Rule 7001.

Krueger's argument fails for the simple reason that this proceeding was adjudicated as a motion to dismiss the bankruptcy case.  The remedy imposed by the court was a dismissal with a temporary filing bar, not the denial of discharge or dischargeability.  The bankruptcy rules permitted this matter to be pursued as a contested motion, and the bankruptcy court conducted the proceeding appropriately.

In any event, any error by the bankruptcy court in hearing this matter as a contested motion was harmless.  *See* Fed. R. Bank. P. 9005 (incorporating harmless error rule); *Barner v. Saxon Mortg. Servs., Inc. (In re Barner)*, 597 F.3d 651, 654 (5th Cir. 2010) (per curiam) ("[Debtor's] substantial rights were unaffected by [creditor] seeking relief by motion rather than by adversary proceeding.  The parties had a full hearing on the merits before the bankruptcy court and the ability to litigate all questions of law there and before the district court.  If there was error in proceeding by motion, it was harmless.") (citation omitted).

No. 14-11355

**B. Due Process**

Relatedly, Krueger asserts he was denied procedural due process because the bankruptcy court considered issues beyond the scope of the motion to dismiss.  Among those he considers beyond the scope were: 1) "that [Krueger] was the *de facto* owner of KRU" 2) that Krueger "committed fraud and engaged in fraudulent transfers" and 3) that Krueger "committed civil theft."  Krueger argues that these complaints should have been litigated in an adversary proceeding, and the court's use of the contested motion procedures denied him "notice and an opportunity to be heard."  This contention is meritless.

Krueger's right to due process was more than vindicated by the court's processes.  "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272, 130 S. Ct. 1367, 1378 (2010) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950)).  Krueger received ample notice of the grounds of the pending motion, including those listed above. The discovery procedures and three-day hearing sufficed to "afford[] [him] an opportunity to present [his] objections."  Krueger also seems to complain that he was deprived of due process by the bankruptcy court's resort to a contested matter process rather than an adversary proceeding.  The Supreme Court unanimously rejected an almost identical argument in 2010.  *Id.* at 271–72, 130 S. Ct. at 1377–78.

**II.    Bad Faith Conduct as "Cause" for Dismissal of a Chapter 7 Case**

Krueger's main argument on appeal is that his bad faith behavior in the bankruptcy process is not "cause" for dismissal under § 707(a).

Under § 707(a), a "court may dismiss a case under this chapter only after notice and a hearing and only *for cause*." (emphasis added).  The statute lists

7

three grounds "for cause" that all courts have understood as illustrative, not exclusive: 1) "unreasonable delay by the debtor that is prejudicial to creditors" 2) "nonpayment of any fees or charges" required to file a case and 3) "failure of the debtor in a voluntary case to file" schedules and creditor lists. *Id.*

This circuit joins those courts that have held a debtor's bad faith in the bankruptcy process can serve as the basis of a dismissal "for cause," even if the bad faith conduct is arguably encompassed by other provisions of the Code. This is no more than acknowledgement in the chapter 7 context of what has long been recognized: "Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." *Little Creek Dev. Co. v. Commonwealth Mortg. Co. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1071 (5th Cir. 1986).

Courts have broad authority to determine what is cause for dismissal under § 707(a): "[C]ause is any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process." *Id.* at 1072 (quoting *In re Victory Constr. Co., Inc.,* 9 B.R. 549, 558–60 (Bankr. C.D. Cal. 1981)) (internal quotation marks omitted). This can include "prepetition bad-faith conduct," *see Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373, 127 S. Ct. 1105, 1111 (2007), postpetition bad faith conduct, or petitions that simply serve no legitimate bankruptcy purpose, *see, e.g.*, *Kelley ex rel. Petters Co., Inc. v. Cypress Fin. Trading Co., L.P. (In re Cypress Fin. Trading Co., L.P.),* 620 F. App'x 287, 289 (5th Cir. 2015) (per curiam); *see also Daniels v. Barron (In re Barron),* 325 F.3d 690, 694–95 (5th Cir. 2003) (Jones, J., concurring).

This broad reading of "cause" is faithful to the dictionary meaning of that term, *see Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza),* 719 F.3d 1253, 1261 (11th Cir. 2013) (collecting dictionary definitions), the customary judicial understanding of that term, and the flexibility traditionally

afforded to bankruptcy courts. *See Little Creek*, 779 F.2d at 1072; *see also Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 660 (5th Cir. 2010) (holding that debtor's "bad faith" and "abuse[]" of the bankruptcy process was relevant to the cause inquiry under in 11 U.S.C. § 1307(c)); *Atlas Supply Corp.*, 857 F.2d at 1063 (bankruptcy courts evaluating § 707(a) motions "must balance the equities and weigh the benefits and prejudices of a dismissal." (internal quotation marks omitted)).

Recently, the Seventh Circuit read § 707(a) broadly in finding that "unjustified refusal to pay one's debts is a valid ground" for dismissal. *See In re Schwartz*, 799 F.3d 760, 764 (7th Cir. 2015). The Schwartzes filed a chapter 7 petition, but not before they depleted their assets substantially through profligate spending. *Id.* at 761–62. Their primary creditor moved to dismiss under § 707(b), the means-testing threshold for mandatory Chapter 13, but the bankruptcy court pretermitted the § 707(b) analysis and dismissed the case for cause under § 707(a) instead. *Id.* at 763. On appeal, the Seventh Circuit affirmed the bankruptcy court, finding "cause" "to embrace conduct that . . . avoids repayment of debt without an adequate reason." *Id.* Here, "the Schwartzes failed to . . . pay as much of their indebtedness as they could without hardship. Their action was deliberate and selfish, and provides good cause for denying the discharge." *Id.* at 763–64. The more specific § 707(b) formula for evaluating "can pay" debtors was no obstacle to affirming a § 707(a) dismissal.

Likewise, the Eleventh Circuit holds that prepetition bad faith is "cause" to dismiss a chapter 7 petition. *See Piazza*, 719 F.3d at 1262. In *Piazza*, the court affirmed dismissal of the chapter 7 of a debtor who sought to discharge a debt owed to a single judgment creditor who was gaining traction in an effort to collect via the Florida state court system. *Id.* at 1258–59. The debtor had also failed to adjust his lifestyle in order to pay his judgment creditor, but had

made payments to certain insider creditors. *Id.* at 1273–74. The Eleventh Circuit rejected all of the statutory interpretation arguments that Krueger raises here and turned aside the idea that § 707(a)'s "for cause" standard is limited by more specific Code provisions. *Id.* at 1267–68. Instead, the court endorsed finding cause under a "totality of the circumstances" approach, because "[b]ad faith does not lend itself to a strict formula" but encompasses "atypical conduct that falls short of the honest and forthright invocation of the Code's protections." *Id.* at 1271 (internal quotation marks, citations, and alteration omitted).

Other courts concur that § 707(a) is to be read expansively. *See, e.g.*, *Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 207–08 (3d Cir. 2000) (Duhé, J., sitting by designation) (debtor ran up huge debts and filed bankruptcy in anticipation of receiving money post-filing in a divorce settlement); *see also Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1129 (6th Cir. 1991) (debtor sought chapter 7 bankruptcy shortly after an adverse mediation award was entered). The court in *Zick* said that it was permissible to consider the debtor's "malicious breach" of his non-compete agreement and his "manipulations which reduced the creditors in this case to one" in the § 707(a) analysis. *Id.* at 1128–29.

In judging whether there is cause to dismiss a case, a court may consider the debtor's entire course of conduct—before, during, and after the filing of a chapter 7 petition. Embraced by this wide-ranging inquiry are acts or omissions arguably covered by more specific provisions of the Code. Krueger strenuously objects to this proposition. Drawing support from the Eighth and Ninth Circuits, Krueger asserts that the general "for cause" dismissal standard under § 707(a) is limited by Code provisions that offer specific remedies for the bad faith conduct at issue here. *See Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1191–94 (9th Cir. 2000); *see also Sherman v. SEC (In re Sherman)*,

491 F.3d 948, 970 (9th Cir. 2007). And although the Eighth Circuit held that bad faith dismissals for cause under § 707(a) should be limited to "extreme misconduct falling outside the purview of more specific Code provisions," nevertheless, where the debtor used a bankruptcy filing to "frustrate [a] divorce court decree and push his ex-wife into bankruptcy," his "non-economic motives" were "unworthy of bankruptcy protection." *Huckfeldt v. Huckfeldt (In re Huckfeldt),* 39 F.3d 829, 832 (6th Cir. 1994). The Eighth Circuit affirmed the dismissal for cause.

Krueger's argument relies on the canon of statutory interpretation that a specific provision governs a more general one. *See, e.g., RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071–72 (2012). Because §§ 523, 707(b), and 727 of the Code address some of the misconduct complained of here, Krueger contends that the bankruptcy court erred in relying on the more general "for cause" language in § 707(a) to dismiss the case.

Reliance on the general/specific canon is misplaced, however, because of the "textual indications that point in the other direction." *Id.* at 2072. First, Congress chose to include the broad language of "for cause" in § 707(a) without any textual qualification. Second, the Code provisions cited do not simply cover the same conduct or result in the same remedy: § 707(b) applies only to individual debtors with primarily consumer debts while § 707(a) applies to any chapter 7 filer. Sections 523(a)[4] and 727(a)[5] each prescribe different remedies for a more limited universe of conduct than that covered under § 707(a). Both typically result in the *permanent* denial of dischargeability or discharge. *See Piazza*, 719 F.3d at 1268. Section 707(a) allows dismissal with a *temporary* bar

---

[4] Containing an exception to discharge for indebtedness for, among other things, debt obtained by "false pretenses, a false representation, or actual fraud."

[5] Denying discharge where, among other things, the debtor failed to keep certain records, "made a false oath or account," or withheld information from the bankruptcy estate.

on refiling. Additionally, §§ 523 and 727 take effect at the conclusion of the case; they do nothing to limit the abuse of the process of bankruptcy and its "powerful equitable weapons" while the process is ongoing. *Little Creek*, 779 F.2d at 1072. Section 707(a), however, allows the court to enforce its authority and prevent ongoing dishonest and vexatious conduct during the case. Finally, while §§ 523 and 727 allow a bankruptcy court to target specific bad acts, only § 707(a) allows the court to consider a concerted scheme of bankruptcy abuse.

Krueger's other statutory interpretation arguments have been convincingly rebutted by other courts. *See Piazza*, 719 F.3d at 1262–70. His suggestion that the enumerated, illustrative examples in § 707(a) are technical and procedural in nature (and thus any other § 707(a) grounds should be technical and procedural) is simply not true. *See Schwartz*, 799 F.3d at 763. Instead, like the grounds for dismissal in this case, they go to the very heart of bankruptcy's ends: an efficient, orderly, and timely disposition of the debtor's assets in exchange for a discharge from debt. Section 707(a)(1) penalizes a debtor's delay that prejudices his creditors, and (a)(3) deals with the debtor's failure to file the most basic of bankruptcy information—how much he owes and how much he has. Subsection (a)(3) targets a particular form of bad faith: the "face sheet" petition, where a debtor files only the minimum amount of information necessary to initiate the automatic stay in order to hinder state-law collection efforts, a long-time weapon of abusive filers. *Cf.* Charles J. Tabb, The Law of Bankruptcy § 3.16 (3d ed. 2014).

We also reject Krueger's assertion that the lack of an explicit good faith requirement in chapter 7, in contrast to chapters 11 and 13, means that a court cannot dismiss for bad faith. Significantly, the sections in chapters 11 and 13 allowing dismissal "for cause" do not mention good faith or bad faith either, *see* 11 U.S.C. §§ 1112(b)(1), 1307(c), but this circuit has interpreted good faith as

No. 14-11355

a relevant consideration, *see Jacobsen*, 609 F.3d at 660. Chapters 11 and 13 both require explicit consideration of good faith to win confirmation of debt repayment plans, but it does not follow that bad faith is irrelevant under chapter 7. *See Piazza*, 719 F. 3d at 1265 ("[T]here is no basis for [the] assertion that bad faith is immaterial in one chapter simply because it is particularly salient in another."). Finally, the Supreme Court has held that bad faith can be the basis of a decision under the Code even if the text does not require its consideration. *See Marrama*, 549 U.S. at 373–75, 127 S. Ct. at 1110–12. It is incorrect to infer that Congress's silence on good faith in chapter 7 is a license for bad faith debtors to misuse that chapter to their ends. "[G]ood faith . . . is inherent in the purposes of bankruptcy relief" and a "necessary prerequisite[]" to obtaining a fresh start." *Zick*, 931 F.2d at 1129 (quoting *McLaughlin v. Jones (In re Jones)*, 114 B.R. 917, 926 (Bankr. N.D. Ohio 1990)).

Further, this interpretation of § 707(a) does not, as Krueger contends, inaugurate a vast, unprecedented, and unchecked power in the bankruptcy courts. *Cf. Marrama*, 549 U.S. at 375–76, 127 S. Ct. at 1112 (positing that even without other Code authorization, "the inherent power of every federal court to sanction abusive litigation practices" might have justified the bankruptcy's court's actions (internal quotation marks omitted)). Instead, this court reads § 707(a) to embrace a power that federal courts have long possessed inherently. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S. Ct. 2123, 2133 (1991).

The automatic stay of actions against a debtor is a potent judicially enforced weapon designed to afford breathing space and a fresh start for the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S. Ct. 654, 659 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S. Ct. 695, 699 (1934)). That weapon has no place being deployed against honest but unfortunate creditors who stand in the path of a dishonest

13

bankrupt.   In sum, a debtor's bad faith conduct can constitute "cause" for dismissal under § 707(a).

### III.    Cause for Krueger's Dismissal

Krueger's case is paradigmatic of the need for cause to include bad faith before, within, and throughout the case.   Krueger's attempt to recast his conduct as a few isolated, questionable acts is unconvincing.[6]   Krueger's actions formed a concerted scheme to use the bankruptcy process as both a shield from legitimate state court actions and a sword to retake control of Cru.

As the bankruptcy court did here, a court should consider any and all "facts and circumstances surrounding the debtor's filing for bankruptcy." *Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364, 373–74 (3d Cir. 2007).   The finding of a debtor's bad faith is a factual determination reviewed for clear error.   *See Jacobsen*, 609 F.3d at 652.   Clear error is a formidable standard: this court "disturb[s] factual findings only if left with a firm and definite conviction that the bankruptcy court made a mistake." *ASARCO, LLC v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re ASARCO, LLC)*, 751 F.3d 291, 294 (5th Cir. 2014) (internal quotation marks omitted), *aff'd sub nom. Baker Botts LLP v. ASARCO LLC*, 135 S. Ct. 2158 (2015).

There is no clear error in the bankruptcy court's findings.   Instead, the record is replete with evidence that Krueger filed bankruptcy for illegitimate purposes, misled the court and other parties, and engaged in bare-knuckle litigation practices, including lying under oath and threatening witnesses.   *See Krueger*, 2014 WL 911857, at *1.   Krueger offered little evidence besides his own testimony to contravene the strong evidence of his machinations and the

---

[6] In his reply brief before this court, Krueger concedes that he "may have made some mistakes" and "engaged in questionable acts" before and after the filing of his bankruptcy case.

bankruptcy court explicitly found he lacked credibility. Even a cold record supports this finding. Though Krueger attempts to reframe this finding as the court's disliking his side of the story, this court encourages and defers to trial court credibility determinations. *See Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 587–88 (5th Cir. 1999).

As the bankruptcy court found:

- Krueger petitioned for bankruptcy not to seek a fresh start as an honest but unfortunate debtor, but to hamper the state court litigation that threatened both "his pecuniary interests" and "his personal freedom." *Krueger*, 2014 WL 911857, at *1. At the dismissal hearing, Krueger testified that among his primary reasons for filing bankruptcy were to 1) avoid the pending criminal contempt proceeding 2) avoid state court summary judgment proceedings 3) otherwise delay the state court litigation because he no longer liked Austin, Texas as a venue and was convinced Austin's judges were biased against him. Krueger, however, had chosen where to file the state court lawsuit. The bankruptcy court found that another of Krueger's primary purposes in filing bankruptcy was to delay state court litigation while he migrated his business interests in Cru to Kru and plotted to regain control of Cru.

- Krueger willfully failed to list his officer and director position in Kru and his de facto controlling interest in Kru on his statement of financial affairs. Krueger's plea that these were innocent oversights is belied by the clarity of the instruction on the statement of financial affairs and the depth of his activity in Kru. For instance, Krueger formed the company in October 2011. Just nine days before filing for bankruptcy, Krueger convened Kru's first shareholders meeting and signed the meeting minutes as "President & Chief Executive Officer." Krueger's "significant efforts" to raise capital on Kru's behalf, both immediately before and

after the bankruptcy filing, were also well documented to the bankruptcy court.   The bankruptcy court concluded that Krueger lied about his interest in Kru to prevent discovery of his efforts to flout the state court injunction and retake control of Cru's business.

- Krueger violated the automatic stay when he voted his shares in the Cru shareholder meeting in which he (and his handpicked fellow nominees) were elected to Cru's board of directors.  The board then immediately voted to dismiss all the claims Cru had against Krueger.  By voting his shares, Krueger was exercising control of his bankruptcy estate's property.   In doing so, the bankruptcy court found that this likely reduced the estate's value, since Cru's claims against Krueger "must have had at least the nuisance value they represented to Krueger."  *Id.* at \*7.  In addition, some of the claims stemmed from Krueger's actions in taking money from the Cru bank accounts.

- Krueger used a false address in his bankruptcy petition.  The bankruptcy court found that this was willful and of a piece with Krueger's conduct in the state court litigation where he listed fake addresses to avoid being served with injunctions and other legal process.  Krueger admitted to the bankruptcy court that he didn't live at the listed address at the time of his filing, doesn't know if it exists (it doesn't), and actually lived somewhere else.

- Krueger repeatedly perjured himself in the bankruptcy court proceedings on a wide range of topics.  For instance, Krueger testified that he did not read the state court's temporary injunction until it was physically served on him in October 2011.  This is contradicted by other witness testimony and physical evidence that Krueger immediately read the injunction after it was issued.

16

- Krueger threatened a witness during the bankruptcy court's hearing on the § 707(a) motion. The bankruptcy court found that Krueger approached another witness during the break in that witness's testimony and said "You're next, buddy. I'm going to sue the s___ out of you." The witness testified that he felt threatened.

Under a flexible, totality of the circumstances approach, the court found that Krueger filed chapter 7 because of a criminal contempt proceeding pending against him, because his state court litigation had taken a turn for the worse, and to provide him the cover to retake control of Cru. These "non-economic motives" are "unworthy of bankruptcy protection." *Huckfeldt*, 39 F.3d at 833. Once his chapter 7 case commenced, Krueger engaged in conduct designed to manipulate the proceedings to his own ends, including false filings, false testimony, and witness intimidation. His duplicitous behavior is exactly the sort of conduct contemplated by most courts as giving cause for dismissal under § 707(a). Finally, the bankruptcy court weighed the costs of dismissal to creditors and was able to mitigate them through appropriate orders. In light of the court's balancing inquiry and findings, it cannot be said that the bankruptcy court abused its discretion in dismissing this case.

## CONCLUSION

The judgments of the bankruptcy court and the district court are AFFIRMED.