# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 7, 2022

Lyle W. Cayce
Clerk

No. 21-30649

In the Matter of: Karcredit, LLC,

*Debtor*,

Ronnie D. Ward; Sharon Denise Albritton Ward,

*Appellants*,

*versus*

Cross Keys Bank; Caldwell Bank; Trust Company,

*Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:21-cv-1629

Before Smith, Duncan, and Oldham, *Circuit Judges*.

Per Curiam:*

Cross Keys Bank loaned Karcredit money. Karcredit defaulted. A bankruptcy court issued a final judgment against Karcredit and its guarantors

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-30649

on a state-law adversary proceeding, and the district court affirmed. Two of the guarantors, Ronnie and Sharon Ward, appeal that affirmance. We reject their arguments and affirm.

## I.

Ronnie Ward sold used cars. One of his companies was Karcredit, LLC ("Karcredit"). Karcredit borrowed about $3.5 million from Cross Keys Bank ("Cross Keys") in 2012. When it did so, it gave Cross Keys a security interest in most of its assets. Ronnie Ward and his wife Sharon Ward (collectively, the "Wards") signed on as guarantors of that loan.

Karcredit defaulted in 2019, with over $3 million still outstanding. Cross Keys then called the loans and sued Karcredit and its guarantors in Louisiana state court. We refer to that litigation as the "adversary proceeding." In essence, the adversary proceeding had two aims: first, to hold Karcredit and Karcredit's guarantors liable for Cross Keys' loan to Karcredit; second, to secure a declaratory judgment regarding Cross Keys' security interests in various property. In July of 2020, pursuant to a separate state-court action, Cross Keys forced a sheriff's sale of most of Karcredit's assets. Cross Keys then bought those assets for $700.

Two days after the sheriff's sale, Cross Keys filed an involuntary bankruptcy petition, thereby forcing Karcredit into bankruptcy. We refer to that as the "main proceeding" or the "bankruptcy proceeding." As a part of that proceeding, Cross Keys filed schedules listing Karcredit's assets. Despite the sheriff's sale, those schedules included some assets, one of which was a fraudulent-conveyance claim the estate had against Ronnie Ward.

Cross Keys then removed the existing adversary proceeding from state court to federal court. *See* 28 U.S.C. § 1452 (allowing removal of some proceedings, provided the bankruptcy court has jurisdiction); 28 U.S.C.

§ 1334 (the relevant jurisdictional provision). From that point on, the bankruptcy court administered the two proceedings in parallel.

Cross Keys moved for summary judgment on its adversary-proceeding claims. The Wards opposed that motion. The bankruptcy court granted partial summary judgment in Cross Keys' favor. This final judgment was a nearly complete victory for Cross Keys: The judgment held Karcredit and its guarantors (including the Wards) liable for over $3 million (plus interest), and it recognized Cross Keys' security interests in various assets.

The bankruptcy court then had second thoughts about its power to enter a final judgment—as opposed to merely submitting recommended findings of fact and conclusions of law to the district court. *See* 28 U.S.C. § 157(c)(1). So on its own motion, it set a hearing to consider the issue. The next day, the court issued a memorandum opinion holding that it did indeed have power to enter a final judgment in the adversary proceeding. It entered that judgment accordingly.

The Wards appealed that judgment to the district court. They raised the same three arguments they raise in this court, which we describe below. The district court reviewed the bankruptcy court's judgment as a court of appeal and rejected each of those arguments. *See* 28 U.S.C. § 158(a); *AT&T Univ. Car Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 402 (5th Cir. 2001). The district court then affirmed the bankruptcy court's judgment. The Wards timely appealed that affirmance to this court. We have jurisdiction to review the district court's final order under 28 U.S.C. § 158(d).

## II.

We (A) hold the bankruptcy court had jurisdiction to decide Cross Keys' adversary claims. Then we (B) hold the Wards consented to the bankruptcy court's issuance of a final judgment. And finally, we (C) hold that because the district court didn't abuse its discretion by holding the Wards'

bad-faith-filing argument forfeited, that argument remains forfeited on appeal.

## A.

Because Cross Keys removed this adversary proceeding from state to federal court, 28 U.S.C. § 1452 governs jurisdiction. With exceptions not relevant here, that provision allows removal of "any claim or cause of action" from state court to federal district court—provided that the district court has jurisdiction under 28 U.S.C. § 1334. Section 1334, in turn, gives district courts "original and exclusive jurisdiction of all cases under title 11"—that is, bankruptcy proceedings themselves. It also gives district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in *or related to* cases under title 11." *Id.* § 1334(b) (emphasis added). As usual, we assess jurisdiction based on the facts as they stood at the time of removal. *See, e.g.*, *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 639 (5th Cir. 2014) (calling this rule "well[-]entrenched").

For 28 U.S.C. § 1334 purposes, a "proceeding is 'related to' a bankruptcy if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999) (quotation omitted). More specifically: "For jurisdiction to attach, the anticipated outcome of the action must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." *Id.* "A conceivable effect in this context is any that *could* alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which *in any way* impacts upon the handling and administration of the bankrupt estate." *Fire Eagle LLC v. Bischoff (In re Spillman Dev. Grp.)*, 710 F.3d 299, 304 (5th Cir. 2013) (quotation omitted); *see also Arnold v. Garlock, Inc.*, 278

F.3d 426, 434 (5th Cir. 2001) ("Certainty, or even likelihood[,] of such an effect is not a requirement.").

It is undisputed that the adversary proceeding before us—in contradistinction to the main bankruptcy proceeding itself—is not a "case[] under title 11" within the meaning of 28 U.S.C. § 1334(a). Thus, the parties correctly agree that the only path to jurisdiction is 28 U.S.C. § 1334(b)'s "related to" jurisdiction.

The adversary proceeding is Cross Keys' attempt to enforce its state-law rights. When Cross Keys filed this proceeding in state court, it sought a judgment of over $3 million against both Karcredit and Karcredit's guarantors.

Our analysis is controlled by *Fire Eagle LLC v. Bischoff (In re Spillman Dev. Grp.)*, 710 F.3d 299 (5th Cir. 2013). There, after a voluntary bankruptcy petition, some of the debtor's guarantors filed an adversary action in bankruptcy court. They sought "a declaratory judgment that . . . the [g]uarantors should be released from their obligations under the guaranty agreements," among other things. *Id.* at 303. The relevant creditor argued that the bankruptcy court lacked 28 U.S.C. § 1334 "related to" jurisdiction over that claim. *Id.* at 304. This court disagreed: "If [the creditor] were to succeed on the merits of this suit and proceed to recover against the guarantees . . . such a recovery would presumably diminish [the creditor's] deficiency claim against the bankruptcy estate, *conceivably allowing a greater recovery for other unsecured creditors against the estate. . . .*" *Id.* at 305 (emphasis added). Accordingly, it held "that the bankruptcy court's jurisdiction extended to these matters." *Ibid.*

So too here. In *Spillman*, the adversary proceeding was the *guarantors'* attempt to *avoid* their guaranty obligations. *Id.* at 303. This case is the mirror image: The adversary proceeding is the *creditor's* attempt to *enforce* the

guarantors' obligations. But the stakes are exactly the same. The adversary proceeding is therefore "related to" the main bankruptcy case. *See id.* at 305; *Bass*, 171 F.3d at 1022.

The Wards have two objections. First, they argue that the estate really has no assets at all. Pointing out that Cross Keys acquired almost all of Karcredit's property in a sheriff's sale just before it forced Karcredit into bankruptcy, the Wards argue that there is simply nothing left. And, it is impossible for the adversary proceeding to have any effect on the administration of an empty estate. *See ibid.*

But the estate is not empty. At the very least, the bankruptcy schedules confirm that the Karcredit estate contained a fraudulent-conveyance claim against Ronnie Ward at the time of removal. *See In re Positive Health Mgm't*, 769 F.3d 899, 903 (5th Cir. 2014) (explaining that a fraudulent-conveyance claim, if successful, claws assets back into the estate that never should have left in the first place). And "[i]t is well established that a claim for fraudulent conveyance is included within estate property." *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 261 (5th Cir. 2010) (quotation omitted). The Wards insist that, if this claim were *really* worth anything, Cross Keys would have pursued it by now in state court. But again, the relevant facts for jurisdictional purposes are the facts as of the moment of removal. *See Am. Nat'l Prop. & Cas. Co.*, 746 F.3d at 639. What Cross Keys does or does not do afterward is irrelevant.

Second, the Wards try to differentiate this case from *Spillman* by suggesting Cross Keys was the only creditor at the time of filing. *See* 710 F.3d at 305 (relying on the adversary proceeding's conceivable effect on other creditors). This argument fails because the Wards conceded in bankruptcy court that there were multiple creditors. "Although parties may not *consent* to jurisdiction, a party may *stipulate or admit* to *facts* underlying jurisdiction."

No. 21-30649

*Durbois v. Deutsche Bank Nat'l Trust Co.*, 37 F.4th 1053, 1060 (5th Cir. 2022) (citing *Ry. Co. v. Ramsey*, 89 U.S. (22 Wall.) 322, 327 (1874)).

B.

The Wards say the bankruptcy court lacked jurisdiction to enter a final judgment in the adversary proceeding. They contend the court had the power only to submit recommended findings of fact and conclusions of law to the district court. We disagree.

Bankruptcy courts have statutory jurisdiction to issue final judgments over "core proceedings." 28 U.S.C. § 157(b). As for non-core proceedings, bankruptcy courts may only "submit proposed findings of fact and conclusions of law to the district court." *Id.* § 157(c)(1). And as the Supreme Court explained in *Stern v. Marshall*, 564 U.S. 462 (2011), Article III does not allow Congress to "withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or in admiralty." *Id.* at 485 (quotation omitted).

Nevertheless, according to the Supreme Court, "litigants may validly consent to adjudication by bankruptcy courts." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 674 (2015). Consent can ameliorate both statutory-jurisdiction defects and constitutional defects. *See Sharif*, 575 U.S. at 671 (majority) (statutory defects); *id.* at 679 (constitutional defects); *see also* 28 U.S.C. § 157(c)(2) (allowing bankruptcy courts to enter final judgments on non-core claims by consent). And "waiver based on actions rather than words" may suffice. *Sharif*, 575 U.S. at 684 (quotation omitted). "[T]he key inquiry" is whether "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the non–Article III adjudicator." *Id.* at 685 (quotation omitted).

Here, the district court found the Wards had impliedly consented to the bankruptcy court's issuance of a final judgment. That was a factual

finding, and it wasn't clearly erroneous. *See Saenz v. Gomez (In re Saenz)*, 899 F.3d 384, 391 (5th Cir. 2018) (reviewing a bankruptcy court's implied-consent finding for clear error); *see also Sharif*, 575 U.S. at 685 (noting the question of implied consent "require[s] a deeply factbound analysis"). Mere days after Cross Keys removed the proceeding to bankruptcy court, the Wards received notice that they should file a statement giving a yes-or-no answer to whether they consented to judgment by the bankruptcy court. And the Wards had notice that the relevant bankruptcy rules required them to give the same yes-or-no answer in their answer to Cross Keys' complaint. But the Wards failed to say one way or another. Instead, after they had notice, they continued to file and amend pleadings and otherwise participated in the adversary proceeding. In other words, after receiving relevant notice, they "still voluntarily appeared to try the case before the non-Article III adjudicator." *Sharif*, 575 U.S. at 685 (quotation omitted). We conclude the district court's consent determination was not clear error.

The Wards respond by invoking policy considerations. But policy is not law. They also point out that, a couple of times during the litigation, the bankruptcy court indicated it planned merely to submit recommended findings of fact and conclusions of law to the district court, rather than entering its own final judgment. This argument, however, overlooks the uncontested sequence of events. As the district court explained, the Wards were notified of these issues a mere six days after Cross Keys removed the case. After that notification, in November 2020, the Wards filed an amended answer to Cross Keys' complaint. And they otherwise continued litigating the adversary proceeding without saying anything about final judgments one way or the other. Ronnie Ward went so far as to affirmatively invoke the bankruptcy court's jurisdiction by asking it to enter a consent judgment on a related claim. And, though the Wards are correct that the bankruptcy court indicated plans not to enter a final judgment, those indications did not come

until the spring of 2021—*after* the Wards' sustained participation in the lawsuit.

## C.

Finally, the Wards say Cross Keys forced Karcredit into bankruptcy in bad faith. *See Krueger v. Torres (In re Krueger)*, 812 F.3d 365, 370–73 (5th Cir. 2016) (bad-faith filing is cause for dismissal of a bankruptcy proceeding). But the Wards forfeited this argument by failing to properly present it below.

The Wards attempted to argue the bad-faith issue in a motion to dismiss the main proceeding in bankruptcy court. After giving the Wards many opportunities to remedy various procedural defects with the motion, the bankruptcy court denied it. The Wards appealed that denial to the district court, but the district court held the denial was a mere interlocutory order not fit for review.

After the bankruptcy court entered its final judgment in the adversary proceeding (the subject of this appeal), the Wards again appealed. And they again argued the bad-faith issue. The district court held that, because the Wards had not properly raised the bad-faith issue in the main proceeding in bankruptcy court, they had forfeited it.

When a district court holds that a party forfeited an issue by failing to properly raise it, our review is for abuse of discretion. *Cf. Seed Co. v. Westerman, Hattori, Daniels & Adrian, LLP*, 961 F.3d 1190, 1195 (D.C. Cir. 2020). Here, it is undisputed that, despite repeated warnings from the bankruptcy court, the Wards failed to raise the bad-faith issue in a procedurally adequate manner. And the whole thrust of forfeiture doctrine is that parties must present issues in a procedurally adequate manner in order to preserve them. *Cf. Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or

No. 21-30649

by failing to adequately brief the argument on appeal."). The district court's forfeiture holding was a straightforward application of that basic principle.

All but one of the Wards' counterarguments rely on the incorrect assumption that this court can review forfeiture *de novo*. The Wards' failure even to contend that the district court abused its discretion is fatal to these arguments.

The remaining counterargument is that bad-faith filing is a jurisdictional issue that cannot be forfeited at all. True, this court has at least suggested that bad-faith filing is jurisdictional in the Chapter 11 context. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 n.1 (5th Cir. 1986) ("The parties agree that the bankruptcy court has the power to raise the issue of good faith *sua sponte* as an inquiry into its jurisdiction, and former Bankruptcy Act precedent in this circuit confirms their position."). That might make sense because the statutory provision that governs bad-faith filing in Chapter 11 cases uses mandatory terms. *See* 11 U.S.C. § 1112(b)(1) (requiring, with exceptions, that "the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter" if there is "cause" to do so (emphasis added)); *Krueger*, 812 F.3d at 373 (explaining that bad-faith filing can be "cause" in a Chapter 11 case).

But the same is not true in the Chapter 7 context. The statutory provision that governs bad-faith filing in Chapter 7 cases is permissive. *See* 11 U.S.C. § 707(a) ("The court *may* dismiss a case under this chapter only after notice and a hearing and only for cause" (emphasis added)); *Krueger*, 812 F.3d at 370–73 (holding bad faith filing counts as "cause" in Chapter 7 cases). Some mandatory provisions are jurisdictional, and some mandatory provisions are not. *Gonzalez v. Thaler*, 565 U.S. 134, 142, 146 (2012) (discussing one of each). But to our knowledge, no permissive provision is

10

No. 21-30649

jurisdictional. We decline to hold that 11 U.S.C. § 707(a) is jurisdictional. The district court's forfeiture holding stands.

AFFIRMED.