In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1416

IN RE: MICHAEL D. SCHWARTZ and ASENETA SCHWARTZ,

*Debtors-Appellants.*

Appeal from the United States Bankruptcy Court for the
Northern District of Illinois, Eastern Division.
No. 13-44047 — **Pamela S. Hollis**, *Bankruptcy Judge*.

ARGUED AUGUST 4, 2015 — DECIDED AUGUST 24, 2015

Before POSNER, KANNE, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. When Michael Schwartz was hired as an executive of Barclays Capital, Inc., the company lent him $400,000 and promised to forgive the loan in equal installments on the first through seventh anniversaries of his start date. But before the second anniversary came round, the company fired him, which under their agreement made the unforgiven principal (about $340,000) immediately due and owing. Schwartz refused to pay, and pursuant to a term in the agreement the dispute between the parties was submitted to an arbitrator. The arbitrator sided with Barclays and ordered Schwartz to pay the company $568,568, which

included attorneys' fees incurred by Barclays in trying to collect the debt as well as the debt itself, plus interest.

It was, as Schwartz admits, in response to the arbitrator's award that he and his wife petitioned for bankruptcy under Chapter 7. Their goal was to obtain a discharge of their debts, not only the debt to Barclays but also debts to other creditors. A discharge would give them a "fresh start," which is to say a future without debt until they borrowed again, or otherwise accrued new debt. See *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015).

But between the announcement of the arbitration award and the filing of the bankruptcy petition the Schwartzes spent thousands of dollars on inessential consumer goods and services, including tickets to Disney World (they have two children). Learning of these expenditures, Barclays, which was both the Schwartzes' principal creditor and the only active opponent of granting a discharge, moved the bankruptcy court to dismiss the petition. It based its motion primarily on two provisions of 11 U.S.C. § 707 (we say "primarily" because Barclays' challenge under section 707(b) was not limited to subsection (1) but extended to other subsections of 707(b) as well):

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—(1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees or charges required under chapter 123 of title 28; and (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information re-

quired by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

(b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter … .

Initially Barclays stressed subsection (b), pointing out that Schwartz's debt was consumer debt, as it was debt created by a personal loan. The social goal of discharging a debt in bankruptcy is to enable the bankrupt to continue to engage in productive activity (Schwartz is a businessman), which would often be impossible were the bankrupt so deeply buried in debt that he would have to devote an inordinate fraction of his resources to debt repayment rather than to business investment. But since losing his job with Barclays Schwartz has been spending his money on consumption by himself and his family, and much of that consumption is optional rather than essential. His monthly income (his wife does not work and has no income separate from her husband's) exceeds $9500, the family has assets of about $350,000, and the family's monthly expenses, of some $11,100, exceed that monthly income by more than $1500. Among the family's many optional consumer expenditures are private-school tuition for their children and a monthly payment of $850 for a Range Rover. In addition, the Schwartzes were represented by counsel during the arbitra-

tion proceedings and for the first eight months of the bankruptcy proceeding; and although the lawyer withdrew before the dismissal of their bankruptcy petition and they are now litigating pro se, they had spent a good deal of money on attorneys' fees during those earlier phases of their struggle with Barclays and those were consumer expenditures because their purpose was to avoid repayment of a personal loan.

It may seem odd that the Schwartzes have only $350,000 in assets despite the $400,000 loan that Barclays had given Mr. Schwartz, but living expenses, monthly car payments on their Range Rover, the legal bills for the arbitration and for the early stages of the litigation in the bankruptcy court, and a period of unemployment following his termination by Barclays, may have depleted the loan. Yet they remain well off. Though their after-tax annual household income of $114,000 ($9500 x 12) doesn't put them in the top 1 percent of American households, extreme wealth is not the criterion for whether to dismiss a petition for bankruptcy under 11 U.S.C. § 707(b). There are several criteria: whether the debts are mainly consumer debts, which the Schwartzes' debts are; if so whether the debtors' income is high enough to enable them to repay a significant amount of debt without sacrificing a reasonable standard of living, which it is; and whether their income is at least as high as the median family income in their region, which it also is.

But we needn't dwell on section 707(b), because the bankruptcy judge decided that rather than become entangled in that section she would decide the case under section 707(a), which is at least superficially simpler, as it permits dismissal of the bankruptcy petition (thus precluding dis-

charge) "for cause." It may not *really* be simpler, because the analysis required by section 707(b) is mainly arithmetical, while the undefined term "cause" in 707(a) invites a more open-ended inquiry.

The Schwartzes argue that the three subsections of section 707(a) are procedural and so the only grounds for dismissal under the section are procedural, or alternatively that the specified grounds are the only possible grounds for dismissal under that section. To take the second argument first, the fact that the three grounds are introduced by "including" tugs against the argument that they are exclusive, or that they exhaust the statute. If you tell your maid to iron your clothes, including your Bond Street tuxedo and its cummerbund, there is no implication that she is not to iron your other clothes. And as for whether the three grounds specified in section 707(a) are procedural, two are not: the first, which punishes unreasonable delay, by a debtor who has filed a bankruptcy petition, in taking steps necessary to the administration of the bankrupt estate; and the second, which involves nonpayment of fees, mainly filing fees. See 6 *Collier on Bankruptcy* ¶ 707.03 (16th ed. 2015).

It would make no sense to limit "for cause" to procedural defects in the bankruptcy petition. Suppose the debtor can pay all or some of his debts without hardship yet refuses without any plausible excuse. We agree with the cases that allow "for cause" to embrace conduct that, while not a violation of required procedures, avoids repayment of debt without an adequate reason. See, e.g., *In re Piazza*, 719 F.3d 1253, 1261–71 (11th Cir. 2013); *In re Zick*, 931 F.2d 1124, 1126–28 (6th Cir. 1991); *In re Huckfeldt*, 39 F.3d 829, 832–33 (8th Cir. 1994). These and other cases often use "bad faith" to denote

"cause" for dismissing a bankruptcy petition for other than procedural reasons, but we can't see what is gained by the terminological substitution. (Rule 707(b)(3)(A), however, *specifies* "bad faith" as a ground for dismissal, though without defining or explaining the term.) On the case law generally, see 6 *Collier on Bankruptcy*, *supra*, ¶ 707.03.

The bankruptcy judge, focusing, as we've just said is proper, on "for cause" cut loose from the three subsections in section 707(a), dismissed the Schwartzes' petition for bankruptcy because of their failure to use any of their earnings or assets to pay any part of the debt they owed Barclays. By spending even more than their substantial income for private purposes, they depleted the assets available to pay their creditors. No one is asking them to live in a tent, dress in rags, drive a 1950 Chevy, or emulate Mme. Loisel in Guy de Maupassant's short story "The Necklace" ("*La Parure*") who loses a borrowed necklace that she believes to be very valuable and ruins herself and her husband financially in order to remunerate the owner, only to discover in the end that the necklace was a fake, made of glass and worth almost nothing. What the Schwartzes failed to do was pay as much of their indebtedness as they could without hardship. Their action was deliberate and selfish, and provides good cause for denying the discharge. The dismissal of their petition will place them under greater pressure to pay off, or at least pay down, their debts than if they're permitted to persist in living high on the hog (relative to the average American family, which cannot afford to spend $11,100 a month on consumption) in the face of a considerable indebtedness.

The *Zick* opinion that we cited states that a bankruptcy petition generally is denied under section 707(a) "only in

those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish life-style, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." 931 F.2d at 1129. That's not the happiest formula. If it is read literally, then "concealed or misrepresented assets and/or sources of income" are grounds for dismissal only if coupled with "excessive and continued expenditures" and with the other terms in the quoted passage; nor is it obvious that failure to repay "a large single debt" is worse behavior than a gratuitous failure to repay multiple debts. So we don't like the formula, but we agree that an unjustified refusal to pay one's debts is a valid ground under 11 U.S.C. § 707(a) to deny a discharge of a bankrupt's debts.

For reasons unclear to us the bankruptcy judge went out of her way to emphasize that she was not finding the Schwartzes guilty of "bad faith." She said they'd have been guilty of bad faith had they stepped up their personal expenditures in anticipation of declaring bankruptcy, so that they would have fewer assets for repaying their creditors. True, the Schwartzes didn't change their standard of living; they just didn't take it down a peg so that there would be some money for their creditors. But that was sufficient cause for denying a discharge of their debts. They could so easily have paid them at least in part; they had no excuse for not doing so. But there's no need to consider whether their conduct amounts to "bad faith." Redundant terminology should be avoided.

We've left for last a jurisdictional issue that arose late in the case. When ordering the bankruptcy petition dismissed

the judge said that she would retain jurisdiction of the case in order to rule on the bankruptcy trustee's not yet presented motion for an award of fees. She added that the Schwartzes would have 14 days after she ruled on the motion within which to appeal. Four months later, with the motion for fees still pending, the Schwartzes and Barclays jointly moved the bankruptcy court to allow the Schwartzes to bypass the district court (to which appeals from decisions by bankruptcy courts normally are taken) and appeal directly to the court of appeals, that is, to us. The bankruptcy judge then issued a statement explaining her dismissal of the bankruptcy petition, along with an order awarding trustee's fees, and told the Schwartzes they had 21 days to appeal (not 14, as she had originally said). They filed their notice of appeal 19 days later.

The actual interval between the order dismissing the petition and the filing of the appeal was more than 160 days. Although the bankruptcy judge thought she could suspend the deadline for appealing, even after issuing the order, until she decided on the trustee's fee, the calculation of that fee was unrelated to the dismissal and therefore could not affect the 21-day deadline for appealing. Federal Rule of Bankruptcy Procedure 8002(d)(3). That deadline is jurisdictional so far as an appeal to the district court is concerned. 28 U.S.C. § 158(c)(2). But the appeal in this case was taken directly to the court of appeals, hence governed by 28 U.S.C. § 158(d)(2)(A), which has no time limit provided that all the parties have jointly certified that the case satisfies one of three specified conditions. *Id.* at (A)(i)–(iii); see *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 746 (7th Cir. 2013).

The principal parties to the litigation so certified on Bankruptcy Form 24, the prescribed form. See Federal Rule of Bankruptcy Procedure 8006(c). But Mrs. Schwartz did not sign the form, just as she did not sign the brief, as she should have done because she's a party and the Schwartzes are proceeding pro se. They explained that her failure to sign both documents was a mistake—she and her husband didn't know she was supposed to sign them—and now that she knows that she should have signed them she wants us to treat them as if signed by her. We are happy to correct a harmless, innocent mistake by a pro se litigant. Unfortunately the correction does not help the Schwartzes, because it merely confirms our power to decide the case on the merits.

The dismissal of the petition for bankruptcy is

AFFIRMED.