**IN RE: David L. DINI, Debtor.**

**Bankruptcy Case No. 13 B 25078**

United States Bankruptcy Court,
N.D. Illinois, Eastern Division.

April 6, 2017

William J. Factor, The Law Office of William J. Factor, Ltd, Northbrook, IL, Ariane Holtschlag, Jeffrey K. Paulsen, The Law Office of William J. Factor, Ltd, Chicago, IL, Zhijun Liu, FactorLaw, Chicago, IL, for Debtor.

## MEMORANDUM OPINION

Janet S. Baer, United States Bankruptcy Judge

In the continuing dispute between debtor David L. Dini and his one-time business partner John H. Sammarco, the issue before the Court is whether the equitable doctrine of laches bars Sammarco's motion to dismiss Dini's chapter 7 bankruptcy case under 11 U.S.C. § 707(a).[1] For the reasons set forth below, the Court finds that Sammarco's delay in filing the motion was unreasonable and inexcusable and that Dini was prejudiced by that delay. Accordingly, Sammarco's motion to dismiss is barred by laches, and, as such, the motion is denied.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## BACKGROUND

The Court incorporates the extensive background section of a memorandum

opinion issued in December 2016 which resolved Sammarco's adversary complaint objecting to Dini's discharge. *See Sammarco v. Dini (In re Dini)*, 560 B.R. 741, 743–55 (Bankr. N.D. Ill. 2016). To provide context for this ruling, certain relevant facts are repeated below, together with additional facts pertinent to this Memorandum Opinion.

In the early 1990s, Dini founded and was the sole shareholder of National Telerep Marketing Systems, Ltd. ("NTMS"), a telemarketing company that sold radio air time to businesses throughout the United States. Several years later, in 1997, Sammarco also became a shareholder of NTMS through the purchase of stock for which he paid $720,000. In May 2008, Dini agreed to buy Sammarco's stock for $1,300,000. Sammarco was given $400,000 as a down payment. The remaining $900,000 of the purchase price plus interest was to be paid via a promissory note in monthly installments of $17,087.39 over five years.

Dini paid Sammarco a total of $595,883.87 under the note. He made full monthly payments to Sammarco until December 2011. By that time, NTMS was losing money and its financial condition deteriorating. According to Dini, he was thus able to make only partial monthly payments to Sammarco from January to April 2012. Subsequently, Dini and Sammarco tried to renegotiate the payment terms under the note. Those efforts were unsuccessful, and in May 2012 all payments to Sammarco stopped. As a result, Sammarco filed a breach of contract suit against Dini and NTMS on July 11, 2012 in the Circuit Court of Cook County, seeking damages, attorneys' fees, interest, and costs. Subsequent efforts to settle proved to be futile.

---

1. Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure.

With NTMS in financial decline and a decision on Sammarco's motion for summary judgment in the state court imminent, Dini and NTMS filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on June 18, 2013 (the "Petition Date"). (Bankr. Nos. 13–25077 & 13–25078.) Both cases were marked by protracted and contentious hearings conducted primarily in response to objections and motions filed by Sammarco.[2]

In the NTMS case, the company decided to sell its assets shortly after the Petition Date. On December 19, 2013, the Court entered an order authorizing and approving the sale of substantially all of NTMS's assets pursuant to § 363. (Bankr. No. 13–25077, Docket No. 160.) Subsequently, NTMS filed a motion to dismiss its bankruptcy case. (*Id.*, Docket No. 188.) On March 25, 2014, the Court granted that motion, and the case was closed on March 31, 2014. (*Id.*, Docket Nos. 193 & 195.)

In Dini's bankruptcy case, Sammarco filed an adversary complaint on November 24, 2013, objecting to Dini's discharge pursuant to § 727(a).[3] (Adv. No. 13–1332, Docket No. 1.) Subsequently, on February 12, 2014, Dini filed a motion to convert his chapter 11 bankruptcy case to a case under chapter 7. (Bankr. No. 13–25078, Docket No. 62.) According to the motion, Dini was not able to generate enough income to pay both his expenses and his unsecured creditors, and thus he could not propose a feasible plan. (*Id.* ¶ 9.) On February 19, 2014, the Court granted the motion and entered an order converting Dini's case. (Bankr. No. 13–25078, Docket No. 70.)

Approximately four months later, on June 4, 2014, Sammarco filed a motion to dismiss Dini's case pursuant to § 707(b)(3) (the "§ 707(b) motion") and requested a one-year bar to Dini's filing additional bankruptcy cases.[4] (*Id.*, Docket No. 94.) In the motion, Sammarco sought dismissal for "abuse," arguing that Dini had filed his bankruptcy case in bad faith. (*Id.* ¶ 1.)

**2.** In the NTMS bankruptcy case, No. 13–25077, *see* Docket No. 36 (Sammarco's objection to sale procedures motion), Docket No. 68 (Sammarco's motion to appoint chapter 11 trustee and vacate sale procedures order), Docket No. 113 (Sammarco's motion to amend sale procedures order). In the Dini bankruptcy case, No. 13–25078, *see* Docket No. 89 (Sammarco's motion for Rule 2004 exam of Dini and others), Docket No. 94 (Sammarco's § 707(b) motion to dismiss), Docket No. 181 (Sammarco's motion for leave to issue Rule 2004 subpoena), Docket No. 183 (Sammarco's motion for Rule 2004 exam of bank holding secured claims in Dini's and NTMS's bankruptcy cases), Docket No. 185 (Sammarco's motion to compel bank and Dini to produce documents), Docket No. 191 (Sammarco's § 707(a) motion to dismiss). In the adversary proceeding, No. 13–1332, *see* Docket No. 1 (Sammarco's complaint objecting to Dini's discharge), Docket No. 13 (Sammarco's motion for leave to file first amended complaint), Docket No. 26 (Sammarco's motion for leave to file second amended complaint), Docket No. 44 (Sammarco's motion for leave to file third amended complaint), Docket No. 66 (Sammarco's motion to compel Dini to produce documents).

**3.** Section 727(a) applies to chapter 11 debtors only through the provisions of § 1141(d)(3). *See* 11 U.S.C. §§ 103, 1141(d)(3); *Wachovia Sec., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 672–73 (Bankr. N.D. Ill. 2010).

**4.** Section 707(b)(1) provides, in relevant part, that after notice and a hearing, the Court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts ...." 11 U.S.C. § 707(b)(1). In turn, § 707(b)(3) provides, in pertinent part, that "[i]n considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter ..., the court shall consider[:] (A) whether the debtor filed the petition in bad faith; or (B) [whether] the totality of the circumstances ... of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3).

According to Sammarco, Dini was living a "lavish" and "unrestrained" lifestyle, making "extravagant" purchases and payments for himself and his family that were "excessive," "unnecessary," and "inconsistent" with those of an "honest, but unfortunate debtor." (*Id.* ¶¶ 15–24, 27–30.) Specifically, Sammarco contended that Dini sold two vehicles that he owned free and clear to purchase and lease two new "luxury" cars less than six months prior to the Petition Date; that he was transferring money directly to his two adult children to pay for their vehicles, school fees, activities, and expenses; that he took his family on a vacation to Cancun just after converting his bankruptcy case; and that he lives in an expensive home all at the expense of his unsecured creditors. (*Id.*)

Because dismissal under § 707(b) is authorized only in cases involving an individual debtor with "primarily consumer debts," 11 U.S.C. § 707(b)(1), the Court agreed, at Dini's request, to consider first whether Dini's debts are primarily consumer debts. Not surprisingly, Sammarco argued that Dini's debts are primarily consumer debts. (Bankr. No. 13–25078, Docket No. 94.) In response, Dini filed an objection, arguing that his debts are primarily non-consumer debts. (*Id.*, Docket No. 109.)

On October 21, 2014, the Court heard evidence and testimony, principally from Dini, as to whether his debts are primarily consumer or non-consumer debts. Thereafter, on January 20, 2015, the Court issued an order in which it concluded that Dini's debts are primarily non-consumer debts

for purposes of § 707(b). (*Id.*, Docket No. 169, at 13–14.) Because Sammarco was unable to establish that threshold element, his motion to dismiss under § 707(b) was denied. (*Id.*)

While the § 707(b) motion was pending, Sammarco filed, with leave of court, a first amended complaint in the § 727 adversary proceeding on June 4, 2014. (Adv. No. 13–1332, Docket No. 16.) About three months later, on September 9, 2014, he filed, again with leave of court, a second amended complaint. (*Id.*, Docket No. 33.) Dini moved to dismiss that complaint on October 7, 2014. (*Id.*, Docket No. 34.) On June 24, 2015, the Court granted in part and denied in part Dini's motion and ultimately allowed the adversary to proceed on certain counts. (*Id.*, Docket No. 52.) Subsequently, Sammarco filed, with leave of court, a third amended complaint (the "Complaint") on July 27, 2015.[5] (*Id.*, Docket No. 53.)

In response to the Complaint, Dini filed an answer on August 17, 2015. (*Id.*, Docket No. 60.) The parties then engaged in discovery for about one year; some of that discovery was contentious, and its resolution required the Court's involvement. After multiple continuances and status hearings, trial was scheduled for September 13, 2016. (*See id.*, Docket No. 90.)

On September 9, 2016, four days before the trial was set to begin, Sammarco filed the instant motion to dismiss Dini's bankruptcy case pursuant to § 707(a) (the "§ 707(a) motion") and requested a three-year bar to filing additional bankruptcy

---

**5.** Of the nine counts in the Complaint, the parties agreed at trial that only three were at issue. In Count I, Sammarco alleged that Dini was not entitled to his discharge under § 727(a)(2) based on his transfers of the two vehicles prior to the Petition Date. In Count V, Sammarco objected to Dini's discharge pursuant to § 727(a)(7), arguing that Dini knowingly made fraudulent statements in

NTMS's bankruptcy schedules while his individual bankruptcy case was pending. And, in Count VII, Sammarco alleged that Dini's discharge should be denied under § 727(a)(4), because Dini knowingly and with fraudulent intent made false statements in connection with a particular debt that had been at issue in Sammarco's § 707(b) motion. (Adv. No. 13–1332, Docket No. 53.)

cases. (Bankr. No. 13–25078, Docket No. 191.) Relying on *In re Schwartz*, 799 F.3d 760 (7th Cir. 2015), Sammarco argued that Dini's case should be dismissed because Dini unnecessarily spent money on himself and his family both prior to and after filing his bankruptcy petition while refusing to pay creditors like Sammarco. (Bankr. No. 13–25078, Docket No. 191 ¶ 1.) According to the motion, *Schwartz* "effected a new interpretation of § 707(a) which is directly applicable to Dini's bankruptcy case." (*Id.*)

Curiously, neither Dini nor Sammarco mentioned before the discharge trial began that the § 707(a) motion had been filed. Rather, before the proceedings got underway on the second day of trial on September 27, 2016, the Court brought the filing of the motion to the fore. (Trial Tr. 5:6–19, Sept. 27, 2016.) In response to the Court's inquiry about why the motion had been filed, Sammarco's counsel explained: "[W]hen [the *Schwartz* ] case was decided, I think about [twelve] months ago, I raised for Your Honor that I anticipated we would be filing something on that." (Trial Tr. 5:20–25, Sept. 27, 2016.) Noting the possibility of conducting the § 727 trial and proceedings on the § 707(a) motion together, the Court pointedly asked Sammarco's counsel why he had waited over a year after the *Schwartz* opinion was issued to file the § 707(a) motion. (Trial Tr. 6:3–10, Sept. 27, 2016.) Counsel responded as follows:

> We learned in 2014 that Mr. Dini, after his case had been converted to a [c]hapter 7, had taken a trip to Cancun with his family. There was lots of social media about that, and that was a concern.
> . . .
>
> Then the *Schwartz* case came out . . . soon after Your Honor had decided the first motion to dismiss [under § 707(b) ].
> . . .

*Schwartz*, in our view, as I see the change in the law, it provides a new avenue for the dismissal of cases.

I was concerned and this is a litigation question. I was concerned that if we filed the motion immediately, it would be based on primarily activities that had taken place prior to the decision and that the debtor would have an argument to be made that, hey, we didn't know that that was the law. That wasn't the law at the time he took his trip.

Mr. Dini has been living in a 6,000–plus square-foot house in Kildeer since this bankruptcy was filed. He still lives in it three years and three months later.

So now, along with the trip that he took while a [c]hapter 7 debtor, one [of] the bases for the motion is that he has he is living a very lavish lifestyle in this home that while it's been on the market for a long time, the price hasn't changed, and the price has not dropped. And we think that he's living there without any intention of actually selling the house.

And so all of that now has he's been living in that house for over a year since the *Schwartz* case, and so that's why we waited.

(Trial Tr. 6:15–7:25, Sept. 27, 2016.)

After this discussion, the § 707(a) motion was continued for further status to October 3, 2016, and the § 727 trial proceeded. Prior to closing arguments on October 3, 2016, the parties both suggested that the Court continue the § 707(a) motion until the discharge issue had been decided. According to counsel for Sammarco, the resolution of the § 707(a) motion will be "very straightforward" and will not "require more evidence and more trial"; rather, Sammarco suggested, the motion can be decided on the papers. (Trial Tr. 3:22–4:21, Oct. 3, 2016.)

After closing arguments, the Court took the § 727 matter under advisement.

Thereafter, on October 14, 2016, Dini filed a "preliminary response" to the § 707(a) motion. (Bankr. No. 13–25078, Docket No. 192.) In that response, Dini argued that Sammarco waited too long to file the motion and that, as a result, the motion is barred by the equitable doctrine of laches.

On December 15, 2016, the Court issued a memorandum opinion on the discharge issue, finding that Sammarco failed to meet his burden to establish the elements required under the applicable provisions of § 727(a). *Dini*, 560 B.R. at 762. Accordingly, the Court held that Dini's discharge will not be denied and set a briefing schedule on the § 707(a) motion. *Id.* After the parties filed "final" briefs in connection with that motion, they appeared at a status hearing on February 9, 2017 and agreed that the Court must decide the threshold issue of laches before considering the substance of the motion. Having reviewed the portions of the pleadings on the laches issue, as well as the arguments of the parties and applicable law, the Court is now ready to rule.

## DISCUSSION

■ The sole issue before the Court is whether laches bars Sammarco's § 707(a) motion. "The equitable doctrine of laches is derived from the maxim that those who sleep on their rights ... lose them." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). "Laches is principally a question of the inequity of permitting a claim to be enforced." *Lingenfelter v. Keystone Consol. Indus., Inc.*, 691 F.2d 339, 340 (7th Cir. 1982). Unlike a statute of limitations, which focuses solely on time, laches is based on "changes of conditions or relationships involved with the claim." *Id.*

■ For laches to apply, there must be a showing of both unreasonable delay by the party against whom the defense is asserted and prejudice to the defending party. *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir. 2003); *Anderson v. Bd. of Regents of Univ. of Wis. Sys.*, 140 F.3d 704, 706–07 (7th Cir. 1998). The decision to apply the doctrine of laches generally "lies on a sliding scale." *Smith*, 338 F.3d at 734. If "only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice required before the [claim] should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice is required." *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 795 (7th Cir. 2002) (internal quotation omitted); *see also Jeffries v. Chi. Transit Auth.*, 770 F.2d 676, 680 (7th Cir. 1985) (explaining that "[t]he longer the delay, the less prejudice [the] defendant must establish"). Whether to apply laches rests within the sound discretion of the Court. *Smith*, 338 F.3d at 733; *Lingenfelter*, 691 F.2d at 341.

### A. The Applicability of the Doctrine of Laches

■ At the outset, the Court addresses Sammarco's contention that the doctrine of laches does not apply to the instant motion to dismiss. Specifically, Sammarco notes that although there are cases in which laches has been applied against a debtor seeking to dismiss his own bankruptcy case under § 707, Sammarco has been unable to locate any cases in which laches has served as a basis to deny a *creditor's* motion to dismiss under any subpart of that statute.

True, there are various cases in which courts have applied laches against debtors who have filed motions to dismiss their cases under § 707. *See, e.g., In re Timmerman*, 379 B.R. 838, 847 (Bankr. N.D. Iowa 2007); *In re Komyathy*, 142 B.R. 755, 756–58 (Bankr. E.D. Va. 1992). The Court's independent research, however, also un-

covered several cases in which a laches analysis was applied in the context of a creditor's § 707 motion to dismiss, including one in which laches was used to deny such a motion. *See, e.g., Ross v. Tognetti (In re Tognetti)*, Nos. 03–37171, 04–9400 (cgm), 04–9165 (cgm), 2006 WL 2587544, at *15 (Bankr. S.D.N.Y. June 21, 2006) (holding that creditors' § 707(a) dismissal motion was barred by the doctrine of laches).

 Sammarco also contends that laches is not applicable here because § 707(a) does not expressly limit when a party can file a motion to dismiss under the statute. This argument is without merit. The very fact that § 707(a) does not contain a limiting provision makes the applicability of the doctrine of laches all the more compelling. Laches embodies "the legal system's interest in finality." *In re Daniels*, 270 B.R. 417, 428–29 (Bankr. E.D. Mich. 2001). "Essentially the equitable substitute for a statute of limitations, laches serves to protect [parties] from prejudice caused by ... prolonged uncertainty about legal rights and status ... and unlimited exposure to liability damages." *Smith*, 338 F.3d at 733; *see also Cook v. City of Chi.*, 192 F.3d 693, 696 (7th Cir. 1999) (explaining that one aim of a limitations period is "to grant the prospective defendant relative security and stability by allowing it better to estimate its outstanding legal obligations").

Accordingly, the application of laches in the context of statutes without limiting provisions is consistent with the doctrine's purpose. Indeed, courts have applied laches in connection with various Bankruptcy Code provisions with no deadline for filing. *See, e.g., Davis v. Ill. State Police Fed. Credit Union (In re Davis)*, 244 B.R. 776, 793 (Bankr. N.D. Ill. 2000) (applying laches to a debtor's allegations of violations of the automatic stay and the discharge injunction, even though the "Code sets no

time limit on the filing of this type of action"); *In re Morris*, 155 B.R. 422, 429–30 (Bankr. W.D. Tex. 1993) (applying the doctrine in the context of conversion under § 348(b), a provision for which there is no filing deadline).

Based on the foregoing, the Court finds that the doctrine of laches is applicable to § 707 motions to dismiss. Therefore, laches is available to Dini as a defense to Sammarco's motion in this case.

**B. Whether Laches Bars Sammarco's § 707(a) Motion to Dismiss**

 The Court now turns to the actual facts of the matter to determine whether the elements for the application of laches have been satisfied. For laches to apply here, Dini must establish that Sammarco's delay in filing the § 707(a) motion (1) was unreasonable and inexcusable, and (2) caused Dini to suffer material prejudice. *See Smith*, 338 F.3d at 733. Sammarco bears the burden of explaining the *reason* for his delay. *See Lingenfelter*, 691 F.2d at 340; *Davis*, 244 B.R. at 793.

**1. Unreasonable and Inexcusable Delay**

 "When applying the doctrine of laches to bar a claim, the period of delay is measured from [the time] the claimant had actual notice of the claim, or, would have reasonably been expected to inquire about the subject matter." *Hollis v. Muller (In re T & M Enters., Inc.)*, 284 B.R. 256, 262 (Bankr. N.D. Ill. 2002) (internal quotation omitted). The delay must be both unreasonable and inexcusable. *Smith*, 338 F.3d at 733. To decide whether a delay is unreasonable for purposes of laches, a court should consider the surrounding circumstances of each specific case. *Bennett v. Tucker*, 827 F.2d 63, 69 (7th Cir. 1987).

 In this matter, the period of delay in filing the § 707(a) motion was more

than two years. In the § 707(a) motion, Sammarco alleges that Dini's case should be dismissed because, both before and after the Petition Date, Dini "lived lavishly," spending money on non-essential items for himself and his family while refusing to pay his unsecured creditors. Specifically, Sammarco cites, *inter alia*, the "massive expenses" associated with the home in which Dini lives, the costs incurred for the Dini family's vacation to Cancun, and Dini's "excessive and unnecessary" consumer purchases for his adult children. (Bankr. No. 13–25078, Docket No. 191.)

These allegations are the same ones that Sammarco advanced in the § 707(b) motion filed on June 4, 2014. At that time, the Court wondered aloud whether there might be a basis for Sammarco's motion under § 707(a). (*See* Trial Tr. 8:8–10, Oct. 3, 2016.) Despite the Court's suggestion, Sammarco did not amend his § 707(b) motion to include § 707(a) as either an additional or alternative basis for dismissal.

Because the instant motion contains the same operative facts as those in the § 707(b) motion, Sammarco had actual notice of the "lavish lifestyle" claim as early as June 4, 2014, when the § 707(b) motion was filed. Despite this notice, he did not file the § 707(a) motion until September 9, 2016. Thus, the delay in filing was approximately two years and three months.

Sammarco, however, contends that the period of delay for purposes of laches was only thirteen months from August 24, 2015, when the Seventh Circuit issued its opinion in *Schwartz*, to September 9, 2016, when he filed the § 707(a) motion. According to Sammarco, he waited to file the motion until *Schwartz* was issued because the decision "effected a new interpretation of § 707(a)" which is "directly applicable" here. In *Schwartz*, the Seventh Circuit held that § 707(a) is not limited to procedural dismissals and that "an unjustified

refusal to pay one's debts is a valid ground under ... § 707(a) to deny a discharge of a bankrupt's debts" by dismissing the case. *Schwartz*, 799 F.3d at 763–64; *see also BMO Harris Bank N.A. v. Isaacson*, 551 B.R. 376, 382–83 (N.D. Ill. 2015) (discussing *Schwartz*).

Dini responds that Sammarco did not have to wait for *Schwartz* to be issued to file his § 707(a) motion. According to Dini, many lower courts in the Seventh Circuit had found even before *Schwartz* that cases can be dismissed under § 707(a) when there is bad faith, when debtors with significant income are living comfortable lifestyles, or both. *See, e.g., Am. Telecom Corp. v. Siemens Info. & Commc'ns Network, Inc.*, No. 04 C 8053, 2005 WL 5705113, at *3 (N.D. Ill. Sept. 7, 2005) (explaining that "cause" in § 707(a) is "routinely ... interpreted to include a lack of good faith"); *United States v. Pedigo*, 329 B.R. 47, 48–51 (S.D. Ind. 2005) (reversing bankruptcy court's conclusion that bad faith is not cause for dismissal under § 707(a)); *In re Schwartz*, 532 B.R. 710, 715–16 (Bankr. N.D. Ill. 2015) (holding that debtors' "extravagant lifestyle, which continued post-petition without any hint of belt-tightening[,]" was "cause for dismissal under § 707(a)"), *aff'd*, 799 F.3d 760 (7th Cir. 2015); *In re Collins*, 250 B.R. 645, 653 (Bankr. N.D. Ill. 2000) (stating that "[b]ad faith can constitute cause for dismissal under § 707(a)"); *see also BMO Harris Bank*, 551 B.R. at 381 (explaining that all circuit courts addressing the issue "allow for bad-faith dismissals under § 707(a) in at least some contexts"). Indeed, parties commonly advance arguments in reliance on lower court decisions until binding authority exists.

It is true that until the *Schwartz* decision in August 2015, the question of whether "cause" under § 707(a) can be based on a debtor's lavish lifestyle had not been

answered definitively in the Seventh Circuit. Indeed, prior to *Schwartz*, some lower courts in the Seventh Circuit had rejected the § 707(a) argument that Sammarco advances. *See, e.g., In re Adolph*, 441 B.R. 909, 911 (Bankr. N.D. Ill. 2011) (finding that § 707(a) "does not permit a case to be dismissed because the debtor filed the case in 'bad faith' "); *Kranig v. Quimby (In re Quimby )*, 313 B.R. 779, 783 n.2 (Bankr. N.D. Ill. 2004) (supporting the position that "bad faith is not 'cause'" for dismissal under § 707(a)). Given the state of the law, it was not unreasonable for Sammarco to proceed under § 707(b) at the time he filed that motion and to delay filing a motion under § 707(a) until after the Seventh Circuit decided *Schwartz*. *See Bennett*, 827 F.2d at 69 (explaining that delay is not unreasonable until the relevant law becomes clear).

■ Once the Seventh Circuit issued the *Schwartz* decision, however, Sammarco waited thirteen additional months to file his § 707(a) motion. Although a thirteen-month delay for purposes of laches may not be long in some instances, such a delay is unreasonable under the circumstances in this case. Sammarco does not contend that he waited to file the motion because he did not know about the issuance of *Schwartz* in August 2015. In fact, prior to the proceedings on the second day of trial in the § 727 adversary, counsel for Sammarco acknowledged that when *Schwartz* was decided, he told the Court that he "anticipated [he] would be filing something" on that decision. (Trial Tr. 5:20–25, Sept. 27, 2016.) Despite that claim, Sammarco made no mention of a § 707(a) motion for over a year, nor did he file one, although the parties were before the Court regularly throughout the pendency of the Dini and NTMS bankruptcy cases.

To justify his delay, Sammarco offers two explanations. First, he says that if he had filed a § 707(a) motion immediately after the issuance of *Schwartz*, the motion would have been based primarily on activities that had taken place prior to the decision, and Dini could then argue that he did not know that *Schwartz* was the law. That theory fails to explain why Sammarco did not file the motion sooner than thirteen months after *Schwartz* was issued. And, in any event, any argument that Dini might have had that he was living lavishly, without paying his creditors, because he did not know that the law prohibited him from doing so could have been readily thwarted. *See, e.g., Skavysh v. Katsman (In re Skavysh)*, No. 12 CV 3807, 2013 WL 1339735, at *3 (N.D. Ill. Mar. 28, 2013) (finding that "people are presumed to know the law, and ignorance of the law is not a defense"), *aff'd*, 771 F.3d 1048 (7th Cir. 2014); *see also* H.R. Rep. No. 109–31, pt. 1, at 2 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88 (explaining that the purpose of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) is to "improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors").

Second, Sammarco claims that the § 707(a) motion "carries substantially more weight thirteen months after [the *Schwartz* ] opinion was issued rather than immediately after issuance, because that decision substantially changed the law." (Bankr. No. 13–25078, Docket No. 195, at 4.) Sammarco seems to be suggesting that he deliberately waited to file the motion because the fact that Dini continued to live a "lavish" lifestyle for over a year after *Schwartz* was decided makes the § 707(a) argument even stronger. Given the circumstances and events in the case, this reason is contrived and disingenuous. Even if a delay would have made Sammarco's case

against Dini stronger, that does not convincingly or legitimately explain why Sammarco waited for thirteen months to file the motion on the eve of the § 727 trial and without a word to the Court that the motion was forthcoming. With the issuance of a binding decision applicable to Dini's bankruptcy case providing an interpretation of § 707(a) in Sammarco's favor, his explanation as to why he waited for over a year neither justifies nor excuses the lengthy delay. *Cf. Bennett*, 827 F.2d at 69 (describing claimant who waited only three weeks to request that the Department of Human Rights process her discrimination claim after the U.S. Supreme Court decided a case establishing her constitutional right to have such claim processed). Accordingly, the Court finds that Sammarco's delay in filing the § 707(a) motion was both unreasonable and inexcusable under the circumstances of this case. The first element of the defense of laches has been satisfied.

### 2. Material Prejudice

In addition to demonstrating unreasonable and inexcusable delay, Dini must also show that he has been prejudiced by that delay. At a minimum, Dini must establish prejudice that is "material" prejudice that affects his substantial rights to such an extent that it justifies the equitable relief of barring Sammarco's § 707(a) motion. *See Smith*, 338 F.3d at 734.

As an equitable substitute for a statute of limitations, laches aims to protect defending parties from prejudice caused by not only stale evidence and witnesses' faded memories, but also protracted uncertainty about legal rights and unlimited exposure to legal obligations. *Id.* at 733; *Cook*, 192 F.3d at 696. "A [defending party] has been prejudiced by a delay when the assertion of a claim available some time ago would be 'inequitable' in light of the delay in bringing that claim

... [and] ensues when [the defending party] has changed his position in a way that would not have occurred if the [opposing party] had not delayed." *Hot Wax*, 191 F.3d at 824; *see also In re Magallanez*, 403 B.R. 558, 564 (Bankr. N.D. Ill. 2009).

In addition to the cost of uncertainty, "[p]ecuniary losses of many types may be considered in weighing the prejudice" to a defending party in the context of laches. *Lingenfelter*, 691 F.2d at 342; *see also Gruca v. United States Steel Corp.*, 495 F.2d 1252, 1260 (3d Cir. 1974) (explaining that "[p]ecuniary loss is a very real factor to be considered in determining whether prejudice to the defendant exists"). In particular, courts have found that "litigation expenses constitute prejudice within the purview of the laches defense." *Lingenfelter*, 691 F.2d at 342; *see also Sworob v. Harris*, 451 F.Supp. 96, 102 (E.D. Pa.), *aff'd*, 578 F.2d 1376 (3d Cir. 1978); *Magallanez*, 403 B.R. at 564 (finding that there was prejudice to creditor for purposes of laches, because creditor was "compelled to expend fees and costs" litigating a stay violation issue, in both state foreclosure proceedings and the bankruptcy court); *In re Carl F. Semrau D.D.S., Ltd.*, 356 B.R. 677, 697 (Bankr. N.D. Ill. 2006) (noting that respondents "demonstrated prejudice arising from the delay in the costs and fees incurred in defending the [d]ebtors' motion [for sanctions]").

Here, Dini has been prejudiced by Sammarco's delay in bringing his motion to dismiss. With the filing of that motion in September 2016, almost twenty months after the Court decided the § 707(b) motion in January 2015, Dini has certainly not been granted "relative security and stability" about his legal rights and obligations. *See Cook*, 192 F.3d at 696.

Because of Sammarco's delay, Dini had to defend against the § 727 Complaint, as

well as Sammarco's numerous motions and objections both in his own and NTMS's cases, undoubtedly at considerable personal and financial expense. In fact, according to his counsel, Dini has already spent hundreds of thousands of dollars on his case. (Trial Tr. 5:14–16, Oct. 3, 2016.) If Sammarco had brought his § 707(a) motion in a timely manner, shortly after the issuance of *Schwartz*, the Court, at a minimum, could have proceeded with both the motion and the adversary complaint at the same time, saving judicial resources and expense for all parties involved. (Trial Tr. 5:22–25, Oct. 3, 2016 ("Frankly, [the Court] wish[es] [that you had] filed [the motion] a lot sooner because ... then we could have decided and perhaps taken it up at the same time we took up the 727 [adversary complaint], but you didn't.").)

Further, although the delay in this matter is thirteen months for purposes of laches, the assertion of a § 707(a) claim was in fact available as early as June 2014, when Sammarco filed his § 707(b) motion. As discussed above, the Court at that time raised the question of whether § 707(a) might also be an appropriate ground for dismissal, given the facts that Sammarco had alleged in his motion. Rather than accepting the Court's invitation to amend his motion to include § 707(a), a provision under which he could have potentially succeeded, Sammarco pursued the § 727 Complaint. Had Sammarco raised § 707(a) in his first § 707 motion, and had he been successful on that ground, neither Dini nor Sammarco would have had to go to the trouble and expense of litigating the § 727 adversary. *See Tognetti*, 2006 WL 2587544, at *15.

Sammarco suggests that bringing the § 707(a) motion now will not prejudice Dini because its resolution will not require "more evidence and more trial." (Trial Tr. 4:2–4, Oct. 3, 2016.) Sammarco states in his reply in connection with the motion, however, that Dini's response contains no evidence, documentary or otherwise, to support the contention that Dini has made "significant changes to his lifestyle" to try to pay his creditors. (Bankr. No. 13–25078, Docket Nos. 193 at 9–12 & 195 at 10.) If the § 707(a) motion were to go forward, Dini would no doubt be forced to provide that evidence. In fact, given the history of this case and the ill will between the parties, it not unlikely that a third trial and countless briefs along with the attendant litigation costs will be required, all to provide Sammarco with yet another bite at the proverbial apple. (*See* Court's comment in Trial Tr. 8:4–6, Sept. 27, 2016 ("Here we are in the middle of a trial. I mean, is this supposed to be a third bite at the apple?").)

Because Dini was exposed to prolonged uncertainty about his legal rights and forced to incur significant litigation expenses, much of which perhaps could have been avoided, the Court finds that Dini suffered material prejudice by Sammarco's unreasonable delay in pursuing the § 707(a) motion. Accordingly, Dini has satisfied the remaining element of the defense of laches.

## CONCLUSION

For the foregoing reasons, the Court finds in its discretion that Dini has established a valid defense of laches by proving that Sammarco's delay in filing his motion to dismiss under § 707(a) was unreasonable and inexcusable and that Dini suffered material prejudice by that delay. As such, Sammarco's motion is barred by laches, and that motion is denied. A separate order will be entered consistent with this Memorandum Opinion.